JOHN HARDMAN et al., Appellants, *v.* HENRY W. SAGE et al., Respondents.

The year within which, under the provisions of the General Manufacturing Act (§ 24, chap. 40, Laws of 1848), an action must be begun for the recovery of a debt owing by a corporation organized under it, so as to lay a foundation for a recovery against a stockholder under the provision (§ 10) making stockholders liable for the debts of the corporation until the whole capital stock has been paid in and a certificate as prescribed filed, begins to run on the day when the debt first became due.

If, therefore, the time of the payment of a debt is extended by the taking of a promissory note, which is sued within a year from the date of its maturity, but more than a year after the debt became due, the claim of the creditor against the stockholders is lost and they cannot be charged with the payment of the debt.

Under the provision of said act (§ 11), which requires a certificate to be made within thirty days after the payment of the last installment of the capital stock, stating the amount of the capital as fixed and paid in, "which certificate shall be signed and sworn to by the president and a majority of the trustees," in order to release the stockholders

from liability, the certificate must be sworn to; an acknowledgment, without verification, is not sufficient.

*Handy* v. *Draper* (89 N. Y. 335); *Rocky Mountain Nat. Bank* v. *Bliss* (89 id. 338), distinguished.

Reported below, 47 Hun, 230.

(Argued October 28, 1890; decided January 14, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 23, 1888, which reversed a judgment in favor of the plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph Ullman* for appellants. The defendants are liable under the Manufacturing Act (§ 10, chap. 40, Laws of 1848), if the conditions of section 24 were complied with, or if their performance was excused. (*Veeder* v. *Mudgett*, 95 N. Y. 295; *Blake* v. *Wheeler*, 18 Hun, 496, 500; *Bonnell* v. *Griswold*, 80 N. Y. 128, 139; *W. A. Co.* v. *Barlow*, 63 id. 62, 66; *O'Reilly* v. *People*, 86 id. 154, 161; *Case* v. *People*, 76 id. 242; *Deming* v. *Puleston*, 55 id. 655; *Van Amburgh* v. *Baker*, 81 id. 46.) Compliance with the provisions of section 24 requiring suit, judgment and execution against the company, is excused, when it becomes impossible by act of the law. (*Shellington* v. *Howland*, 53 N. Y. 371; *Kincaid* v. *Dwinelle*, 59 id. 548; *Cuykendall* v. *Corning*, 88 id. 129, 137; *Flash* v. *Conn*, 109 U. S. 371; *Miller* v. *White*, 50 N. Y. 137; *McMahon* v. *Macy*, 51 id. 155.) The debt of the company to the plaintiffs became due within a year prior to its dissolution, even if it be conceded that the notes sued on are renewals of former indebtedness. (*Corning* v. *McCullough*, 1 N. Y. 47; *Wiles* v. *Suydam*, 64 id. 173; *Cochran* v. *Wiechers*, 119 id. 300; *Richmond* v. *Iron*, 121 U. S. 27; *Garrison* v. *Howe*, 17 N. Y. 458; *W. A. Co.* v. *Barlow*, 68 id. 34; *Jones* v. *Barlow*, 62 id. 202; *Handy* v. *Draper*, 89 id. 334; *Veeder* v. *Mudgett*, 95 id. 295.) The so-called Spargo note was not a renewal or extension of an old obligation, but

the indorsement or guaranty thereof by the company created a new debt. (*Shaw* v. *R. L. Ins. Co.*, 69 N. Y. 286; *Pratt* v. *Cowan*, 37 id. 440; *J. I. Co.* v. *Walker*, 76 id. 525.) The conclusions of the learned referee may be sustained on another ground, viz., that the notes mentioned in the complaint were not renewals or extensions of prior debts, but were independent transactions and themselves represented or created new indebtedness. It is immaterial that this was not the view taken by the referee. (*Arnot* v. *E. R. Co.*, 67 N. Y. 315; *McCormick* v. *P. C. R. R. Co.*, 80 id. 362; *Ahern* v. *Goodspeed*, 72 id. 117; *Everson* v. *City of Syracuse*, 100 id. 577; *Slattery* v. *Schwainnecke*, 118 id. 543; *Rothschild* v. *Mack*, 115 id. 1; *Larkin* v. *Hardenbrook*, 90 id. 333; *Wood* v. *Rabe*, 96 id. 420; *Loncey* v. *Clark*, 64 id. 209; *Burr* v. *Smith*, 21 Barb. 262; *Eastman* v. *Plumer*, 32 N. H. 238; *Kennedy* v. *Chapin*, 67 Md. 454; *Greening* v. *Patten*, 51 Wis. 146; *Citizens' Bank* v. *Lay*, 80 Va. 436; *Dooley* v. *Ins. Co.*, 3 Hughes, 221; *Cameron* v. *Tome*, 64 Md. 507; *Hoyt* v. *Cross*, 108 N. Y. 76; *M. N. Bank* v. *Sirrett*, 97 id. 328, 329; *Dunham* v. *Cudlipp*, 94 id. 135; *People* v. *Ryan*, 10 Abb. [N. C.] 37; *United States* v. *Isham*, 17 Wall. 496.)

*Thomas G. Shearman* for respondent. The plaintiffs were not entitled to recover in this action against these defendants, as stockholders in the Ithaca Organ Company, unless the debt sued upon was to be paid within one year from the time that it was contracted, nor unless a suit for the collection of such debt was brought against the company within one year after it became due. (Laws of 1848, chap. 40, § 24.) The personal liability of the holder of stock in a manufacturing corporation cannot be kept alive beyond the term fixed by statute, by any extension of the credit originally granted to the corporation by the creditor who seeks to enforce the liability. (*Parrott* v. *Colby*, 6 Hun, 55; 71 N. Y. 597; *J. I. Co.* v. *Walker*, 76 id. 521; *Parrott* v. *Sawyer*, 87 id. 622.) If it were true that no due date was ever definitely fixed, then payment for the pianos in question would have been due immediately upon

their delivery. It is ancient law, that where no time is fixed for the payment of money payment is due immediately. (*L. O. R. R. Co.* v. *Mason*, 16 N. Y. 451; *Purdy* v. *Phillips*, 11 id. 406; *Thompson* v. *Ketcham*, 8 Johns. 187; *Gibbs* v. *Southam*, 5 Barn. & Ad. 911.) The transactions detailed in the testimony do not create any new indebtedness, but were simply renewals of the prior indebtedness. Whatever form such transactions may assume, the court should look at the substance. (*J. I. Co.* v. *Walker*, 76 N. Y. 521; *Price* v. *Bank of Lyons*, 33 id. 55; *Walker* v. *Bank of Washington*, 3 How. [U. S.] 62; *In re Wilde*, 11 Blatchf. 243; *Vickery* v. *Dickson*, 35 Barb. 96; 62 id. 272; *Jackson* v. *Packard*, 6 Wend. 415; *Reed* v. *Smith*, 9 Cow. 648; *Tuthill* v. *Davis*, 20 Johns. 285; *Hill* v. *Beebe*, 13 N. Y. 556; *Gregory* v. *Thomas*, 20 Wend. 17; *Waydell* v. *Luer*, 5 Hill, 448; *Cole* v. *Sackett*, 1 id. 516; *Muldon* v. *Whitlock*, 1 Cow. 290.) If the theory of the referee had been correct, so that the plaintiff never had a right to sue the corporation until the extended time of payment arrived, under the contract, as modified by their extensions of notes a⁴ four months instead of sixty days, then the plaintiffs must fail in this case, because the debt would not have been payable within one year from the time it was contracted. (Laws of 1848, § 24; *Cox* v. *Gould*, 4 Blatchf. 341; *Bank of Geneva* v. *P. Bank*, 13 N. Y. 309; *Montford* v. *F. Bank*, 26 Barb. 568; *Central Bank* v. *E. S. Co.*, 26 id. 23; *F., etc., Bank* v. *E. S. D. Co.*, 5 Bosw. 275.) Even if it were true that a receiver of the property of the piano company was appointed, and the company was dissolved before the expiration of a year after the claims in suit became payable, yet this did not do away with the necessity of the plaintiffs exhausting their remedies against the company, as represented by the receiver before commencing this action. (*Williams* v. *Vanderbilt*, 29 Barb. 491; *Schillizi* v. *Derry*, 4 El. & B. 873; *White* v. *Mann*, 26 Hun, 368; *B. N. Bank* v. *Mosser*, 14 Hun, 605; *Mason* v. *N. Y. S. M. Co.*, 27 id. 307.) It does not appear that the stock which is held by the defendants is of such a nature as to subject them to any liability

under this statute. Stockholders who have paid for their stock in any kind of property other than cash are not liable in an action of this kind; and it is for the plaintiff to prove affirmatively that the defendants are liable. (1 Greenl. on Ev. § 78; *Roberts* v. *Chittenden*, 88 N. Y. 33, 35; *Schenck* v. *Andrews*, 46 id. 589; *Brown* v. *Smith*, 80 id. 650; 13 Hun, 408.)

FOLLETT, Ch. J. This action was begun to recover from shareholders in the Ithaca Organ & Piano Company the amount due on four notes made by it, and the amount due on the note of a third person indorsed by the corporation, on the ground that the following section of the Manufacturing Act had not been complied with :

"§ 10. All the stockholders of every company incorporated under this act, shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in the following (eleventh) section."

May 19, 1877, the Ithaca Organ Company was duly incorporated under chapter 40 of the Laws of 1848, with a capital stock of $25,000 divided into 500 shares of $50 each, the affairs of which were to be managed by four trustees. No certificate stating the amount of the capital fixed and paid in was signed, sworn to and recorded as required by the eleventh section of the act. October 4, 1880, the capital stock was increased to $125,000, the defendants under their firm name of H. W. Sage & Co. then becoming the owners of 400 shares of the new stock. Sixty two thousand five hundred dollars of the increase was paid in in cash and the remainder, $37,500, by capitalizing the surplus earnings of the corporation. January 10, 1882, a certificate was recorded in the office of the clerk of the proper county, of which the following is a copy :

"ITHACA, N. Y. *January 9th*, 1882.

" *To the Clerk of the County of Tompkins :*

" This is to certify that the capital stock of The Ithaca Organ Company limited and fixed in the sum of one hundred and twenty-five thousand dollars, was fully paid in on the 3d of January, 1882.

" WM. L. BOSTWICK,

" *President and Trustee.*

" P. F. SISSON, *Trustee.*

" H. WEGMAN, *Trustee.*

" STATE OF NEW YORK, } *ss.:*
  " *Tompkins County.* }

" On this 10th day of January, 1882, appeared before me, Wm. L. Bostwick, P. F. Sisson and H. Wegman, personally known to me, and each acknowledged for himself that the statement above was true to the best of his knowledge and belief.

" WILLIAM G. KING,

" *Notary Public.*"

On the 13th of March, 1882, the name of the corporation was changed from " The Ithaca Organ Company " to " The Ithaca Organ and Piano Company. " On the 2d of January, 1883, the capital stock was again increased to $215,000, the defendants under their firm name becoming the owners of 272 shares. The increase, $90,000, was paid in partly in cash and partly by capitalizing the then existing surplus of the corporation. January 3, 1883, a certificate was made and recorded in the office of the clerk of the proper county, of which the following is a copy:

" *To the Clerk of the County of Tompkins :*

" This is to certify that the capital stock of The Ithaca Organ and Piano Company is limited and fixed in the sum of two hundred and fifteen thousand dollars, and was fully paid in on January 2, 1883.

" WM. L. BOSTWICK, *President.*

" WM. H. SAGE, *Trustee.*

" P. F. SISSON, *Trustee.*

"STATE OF NEW YORK, ⎫

"*Tompkins County.* ⎬ *ss.:*

"On this 3d January, 1883, appeared before me, Wm. L. Bostwick, P. F. Sisson and W. H. Sage, personally known to me, and each stated for himself that he executed the above instrument.

"WM. G. KING,

"*Notary Public.*"

Section 11 of the act provides: "§ 11. The president and a majority of the trustees, within thirty days after the payment of the last instalment of the capital stock so fixed and limited by the company, shall make a certificate stating the amount of the capital so fixed and paid in, which certificate shall be signed and sworn to by the president and a majority of the trustees, and they shall, within the said thirty days, record the same in the office of the county clerk of the county wherein the business of the said company is carried on."

The certificates above quoted not having been sworn to but simply acknowledged, were not a compliance with the eleventh section (*Brown* v. *Smith,* 13 Hun, 408; affirmed, 80 N. Y. 650), and the liability of the owners of the new shares for the debts of the corporation under section 10 was not terminated. (*Vedder* v. *Mudgett,* 95 N. Y. 295.)

Was a judgment and an unsatisfied execution in an action begun against the corporation within one year after the debt became due for its recovery, necessary under the circumstances of this case, to enable the plaintiffs to maintain this action?

The twenty-fourth section of the act provides: "§ 24. No stockholder shall be personally liable for the payment of any debt contracted by any company formed under this act, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against such company within one year after the debt shall become due; and no suit shall be brought against any stockholder * * * until an execution against the company shall have been returned unsatisfied in whole or in part."

On the 24th of January, 1885, a final judgment dissolving

the corporation was entered in an action brought by the People pursuant to article 1 of title 2 of chapter 15 of the Code of Civil Procedure, which rendered it impossible for the plaintiffs to recover a judgment and have an execution returned unsatisfied pursuant to the last quoted section, by reason of which fact they became entitled to maintain this action for the recovery of any debt which, within the meaning of that section, fell due during the preceding year without first obtaining a judgment against the corporation and having an execution returned unsatisfied. (*Shellington* v. *Howland*, 67 Barb. 14; affirmed, 53 N. Y. 371; *Kincaid* v. *Dwinelle*, 5 J. & S. 326; affirmed, 59 N. Y. 548.)

The case last cited arose out of the following facts: An action was brought against a corporation by a judgment creditor pursuant to sections 36 and 37 of article 2, title 4, chapter 8, part 3 of the Revised Statutes, in which a receiver was appointed, on the 24th of April, 1886, with the powers conferred by the Revised Statutes, by chapter 71 of the Laws of 1852, and by chapter 463 of the Laws of 1860. On the 11th of December, 1866, a judgment was recovered for wages earned during the preceding year on which an execution was returned unsatisfied; and in April, 1877, Kincaid began an action, under section 18 of chapter 40, Laws of 1848, to recover the amount of the judgment from Dwinelle, a shareholder. It did not appear that a final judgment dissolving the corporation had been entered, but it was insisted, in behalf of the defending shareholder, that by the appointment of a receiver the corporation was dissolved, and could not thereafter sue or be sued, and that the judgment of December 11, 1866, having been entered in an action begun after the receivership, was a nullity. It was said by ALLEN, J., speaking for a unanimous court: "If the position of the appellant, that the New York Silk Manufacturing Company was *ipso facto* dissolved by the appointment of a receiver in April, 1866, and was not thereafter capable of suing and being sued as a corporation, is well taken, it would seem to follow that the condition precedent to an action against a stockholder, that there must be an unsatisfied judg-

ment against the corporation, having become impossible of performance by the act and operation of law, is no longer of force, and the creditor has his action at once against the stockholders without the necessity of an attempt first to recover the debt of the corporation. (*Shellington* v. *Howland*, 53 N. Y. 371.) The proceeding against the corporation is only required for the benefit of the stockholders, as a part of the immunity against a primary personal liability vouchsafed by law to corporators shielding them from action until a *bona fide* attempt has been made and exhausted to obtain payment from the corporate property.

"The judgment against the corporation is of no virtue or effect in the action against the stockholder, and is only evidence as proving the performance of the condition precedent. If, therefore, the judgment was valid the condition was performed; if it was a nullity, because there was no corporation in existence after the appointment of the receiver, the condition was impossible of performance and was of no force, and the right of the plaintiff to his action was perfect. Any other rule would give to stockholders of corporations, laboring under pecuniary embarrassments, a very easy way of escape from statutory liabilities, and would make the security intended by the personal liability clause of the act for the formation of manufacturing corporations (Chap. 40 of Laws of 1848), for services performed for the corporation by laborers, servants and apprentices a sham and a cheat rather than a substantial benefit."

The Ithaca Organ and Piano Company having been dissolved, this case falls within the reasoning of the one last cited.

In *Flash* v. *Conn.* (109 U. S. 371), which arose under the Manufacturing Act, it was held that when a corporation had been adjudicated a bankrupt it was unnecessary for a creditor to obtain a judgment before bringing his action to charge a shareholder under the 10th section of the act, which seems to conflict with *Birmingham Nat. Bank* v. *Mosser* (14 Hun, 605).

*Handy* v. *Draper* (89 N. Y. 335) and *Rocky Mountain Nat. Bank* v. *Bliss* (Id. 338) are not in conflict with *Shellington* v. *Holland* or *Kincaid* v. *Dwinelle*, for in those cases no

reason existed for not recovering judgments against the corpo-
rations.  In *Cuykendall* v. *Corning* (88 N. Y. 129), it was
said : " The further facts must be alleged which are essential
under the act of 1848 to disclose a right of action against the
stockholders, viz., that the capital was not paid in ; that the
debt for which the stockholder is sought to be charged was a
contract debt, and was contracted to be paid within one year ;
that an action was brought against the company within one
year ; that judgment was recovered thereon and execution
returned unsatisfied.   Or if, under the doctrine of the cases of
*Shellington* v. *Howland* (53 N. Y. 374) and *Kincaid* v. *Dwi-
nelle* (59 id. 551), the condition of recovering a judgment had
been rendered impossible by the act of the defendant, or the
act of the law, that fact must be shown."

Was this action begun within one year after the debts sought
to be recovered by it became due within the meaning of the
twenty-fourth section ?

On various dates between June 16, and October 4, 1883, the
plaintiffs sold and delivered to the Ithaca Organ and Piano
Company, thirty-nine pianos for $7,540.50, under a written
contract providing that " Settlement to be made within ninety
days from average date of shipments, either by cash or sixty
days' note, with interest."   August 7, 1883, was the average
date of the shipments.   November 5, 1883, the $7,540.50 was
payable in cash or by note, but before that date the corporation
settled the account by giving four notes running four months,
of the dates and for the amounts following : September 28,
1883, $3,000, due January 31, 1884 ;  October 10, 1883,
$1,530.74, due February 13, 1884 ;  November 1, 1883, $2,205,
due March 4, 1884 ;  November 1, 1883, $1,000, due March 4,
1884.

The difference, $195.24, between the price of the pianos and
the amount of these notes was the interest added pursuant to
the contract.

The note for $1,000 was paid in cash, but the others were
taken up partly by cash and partly by new notes made by the
corporation, which were also taken up partly by cash and partly

by like new notes, and they in turn were taken up in the same way until the following were given on which this action was brought: October 1, 1884, $1,586.20 due February 4, 1885; November 24, 1884, $500 due December 29, 1884; November 24, 1884, $1,000 due January 5, 1885; December 4, 1884, $1,530.74 due April 7, 1885.

The year within which an action must be begun for the recovery of a debt owing by a manufacturing corporation so as to lay a foundation for a recovery against a stockholder, begins to run on the day when the debt first became due, and if the time of its payment is extended by a promissory note which is sued within a year from the date of its maturity, but more than a year after the date when the debt for which it was given first became due, and a judgment is recovered and an execution returned unsatisfied, it is not a compliance with the section quoted, and stockholders cannot be charged with the payment of the debt. (*Parrott* v. *Colby*, 6 Hun, 55, affirmed 71 N. Y. 597; *Jagger Iron Co.* v. *Walker*, 76 id. 521; *Parrott* v. *Sawyer*, 22 Hun, 611, affirmed 87 N. Y. 622; *S. C.* 13 N. Y. W. Dig. 317.)

It is sought to distinguish the cases cited from the one in hand, because in the latter the date when the purchase-price of the pianos should become payable in money was not definitely fixed until the four notes were given, as the average date of all the shipments changed with every successive sale under the contract, and that before November 5, 1883 (the date when the price of all the pianos was payable in cash), the notes were given which were dishonored within the year preceding the date of the dissolution of the corporation. We think the case in hand is not distinguishable in principle from those cited. By the terms of the contract, and the action of the parties under it, the original debt became due November 5, 1883, and the extension before that date of the time in which it might be paid had the same effect on the rights of the creditor, the corporation and its shareholders as though the extension had been made at or after the maturity of the debt. The object of the section is to protect persons who credit manufacturing

corporations for not longer than twelve months.  Those who, in the first instance, give more than a year's credit are expressly excluded from the benefit of the section, and we cannot see that those who, by successive extensions, lengthen the period of credit beyond one year, are within the letter or spirit of the statute.  By extending the time for the payment of a debt due from such a corporation by one or by several contracts, the creditor loses his claim upon the shareholders under the tenth section.

The Ithaca Organ and Piano Company was also indebted to the plaintiffs on a promissory note given for a debt that fell due more than a year before the dissolution of the corporation, which it satisfied September 9, 1884, partly in cash and partly by indorsing and delivering to the plaintiffs a promissory note made by E. L. Spargo, for $475, payable to the corporation seventy-five days after date, which, at maturity, November 25, 1884, was dishonored and protested, the amount of which is sought to be recovered in this action.

It is urged that this note is not an extension of the period in which the original debt was to be paid, but that it was *pro tanto* payment, creating a new liability by the indorsement, which matured within the year preceding the dissolution of the corporation.  As hereinbefore said, the object of the statute was the protection of creditors for a definite time, and they cannot extend it beyond the statutory limit and retain their right to recover from the shareholders.  If creditors of manufacturing corporations desire to hold its shareholders liable under the tenth section, their claims must become due within one year from the time when contracted, and the period of credit must not be extended by new contracts between the corporation and the creditor.

The order should be affirmed and judgment absolute rendered against the appellant, with costs.

BRADLEY, J.  I concur in the result, and my non-concurrence in the views expressed in the prevailing opinion has relation only to the effect of the transfer of the Spargo note.

to the plaintiff by the Ithaca Organ and Piano Company, indorsed by the latter. That company was the holder of the note. And it must be assumed on this review that it was delivered by the company to and taken by the plaintiffs in payment of an amount of the debt due them from the company equal to that of note; and in that view so much of the debt was extinguished, and the only liability of Piano Company in that respect existing was that created by its indorsement. The contract made by the indorsement was a new and independent one made legitimately in due and regular course of business, and comes within the meaning of "debts and contracts made by such company" mentioned in section 10 of the Manufacturing Act. The determination of that question was not necessary to the result reached, as the recovery embraced also the amount represented by renewal notes of debt, the time for payment of which as originally contracted for expired more than a year before the dissolution of the corporation.

All concur, except BRADLEY, J., who concurs in result, and HAIGHT, J., not sitting.

Order affirmed and judgment absolute in favor of defendants on stipulation.