By the Court, Talcott, J.
This is an' action to recover the rent of what is termed a salt block. Two questions are presented; one a question of law, whether *551 upon the lease there arises an obligation on the part of the defendant to pay the specified rent, at all events. The other a question of fact, whether the net profits of the defendant were sufficient during the year for which the rent is claimed, to entitle the plaintiff to the whole of the rent specified, under that clause of the lease which pledges the net profits for the payment of the rent. It is conceded that there is no express covenant contained in the lease to pay the specified rent. The form of the instrument is a lease on condition. The condition is the payment of the rent, and the estate is defeasible on non-payment, at the times specified. At common law, however, various covenants were implied in deeds in regard to matters, as to which there was no express covenant. According to the rule of the common law, these covenants were implied from certain words used in the instrument, as “grant,” “demise,” &c. By the Revised Statutes, the doctrine of implied covenants was abrogated as to conveyances. This statute, however, it has been held, does not apply to leases for years. (13 N. Y. 158.) Covenants, therefore, are still implied in leases for years. The covenants usually so implied are, on the part of the lessor, for quiet enjoyment, and on the part of the lessee, for the payment of rent. In Bacon’s Abridgment,is laid down: “So if a man leases for years, reserving rent, an action of covenant lies for non-payment of the rent, for the ‘ reddendo’ of the rent is an agreement for the payment of the rent, which will make a covenant. ’ ’ (Bacon’s Abr. Covenant, B.) So a covenant to pay rent is implied from the words “yielding and paying.” (Bacon’s Abr. id.) Perhaps the technicality of the ancient common law, restricting the implication of covenants to cases where certain technical words were used in the instrument, has been departed from, and the rule at present probably is as stated by Parsons, “that words of proviso and condition will be construed into words of covenant when *552 such is the apparent intention and meaning of the parties.” (2 Pars. on Cont. 511.) There is, however, another technical rule of law concerning the implication of covenants, which bears upon this case, viz: That an express covenant relating to the same subject, if it does not altogether prevent and take away all implied covenants, at least qualifies and restrains them, even without negative words. It is stated in Vanderkarr v. Vanderkarr, (11 John. 122,) that an express covenant takes away all implied covenants. The rule as laid down in Kent v. Welch, (7 id. 258,) is that an express covenant qualifies and restrains the implied covenant, within the import and effect of the express covenant, so that the former is not to be held broader than the latter. And this seems to be a just and sensible rule. All rules for the construction of deeds are founded upon the idea of arriving at the intention of the parties; and when they have made an express agreement touching the same subject, it is to be presumed that they have expressed all that was agreed upon.
This lease contains an express covenant pledging the net earnings of the salt company, in any one year, to the payment of the rents accruing upon this, and all other leases of solar or fine salt works during the same year—a provision inconsistent with the idea that it was understood that the company was to be liable to pay the rent in any event, whether any profits were made or not. And if this provision was not enough to preclude the idea of any implied covenant to pay the rent at all events, and to prevent the possibility of any such implication, from abundant caution, the draughtsman added to this pledge of the net earnings, the following language: “It being, however, further understood that the said party of the second part enters into no other, or different, covenant, or agreement respecting such rents.” After this provision, we do not see how there can be left a shadow of doubt, that the lessee did not *553 intend to, and did not, covenant, or agree, to pay the rent otherwise than by an appropriation to and among the different lessors, of the net earnings of the company during the year in which the rent accrued.
The plaintiff claims that the defendant is liable to the payment of the rent sued for, upon the ground that the net earnings of the current year were sufficient to pay the same. No such issue was presented by the pleadings, for the plaintiff in his complaint ignored the provision as to the net earnings, and sued upon an allegation of an unqualified agreement, on the part of the salt company, to pay the rent. The answer was a mere general denial. Nevertheless, evidence was given on the subject of the net earnings, and the court found, as a matter of fact, there were none, applicable to the payment of the rent sued for.
The lease commenced to run March 1, 1870. The rent was ten per cent of the value of the property, to be ascertained by appraisal. The appraisal was had, and the value found to be $7,220. The rent was therefore $722, and it was payable in four installments, on the first days of September, November, January and March. The rent sued for is that which accrued on the first day of March, 1872, all previously accruing rent having been paid. Contemporaneously with the taking of the lease in question, the salt company took some ° three hundred other leases of salt blocks, containing, substantially, the same provisions as the one executed by the plaintiff. It will be observed that the pledge of the net earnings is to the plaintiff, in common with all the other lessors. It appears that in the year 1871, the business of the company had been conducted at a loss, so that the capital of the company had become seriously impaired, and in February, 1872, in order to induce the salt company to continue its business, ah the lessors of the three hundred salt blocks, except the plaintiff and thirteen others, entered into an agreement with the salt *554 company concerning a division oí the net earnings for the year 1872, the effect of which, as the business resulted, was to donate to the company out of the net earnings, to which those who signed the agreement would otherwise have been entitled, about $40,000, which was applied, so far as it went, in reimbursing the capital lost in 1871. The plaintiff claims to be entitled to be paid the rent sued for out of the amount thus relinquished and donated to the company by the other lessors. This, we think, is erroneous. "Under the pledge of the net earnings to the plaintiffs in common with the other three hundred lessors, he was only entitled to his aliquot portion.
[Fourth Department, General Term, at Rochester,
April 1, 1873.
Mullin, Talcott and E. D. Smith. Justices.]
The actual net earnings of the company for the year in question, as we understand the facts, amounted, for the year 1872, to somewhat less than four per cent on the aggregate amount of the rents for which they were pledged. The plaintiff has received three quarters of his rent for that year, making in all seven and a half per cent on the valuation of his salt block, or more than three per cent above his proportion of the common fund to which, by the terms of the lease, he was strictly entitled. We therefore think the judgment for the defendant was correct.
Judgment affirmed.