ASSETS REALIZATION COMPANY, Suing in Behalf of Itself and Other Creditors of METROPOLITAN BANK, Appellant, *v.* CLARENCE M. HOWARD et al., Respondents.

Banks — individual liability of stockholders — limitation of such liability — transfer by one banking corporation of all of its assets to another bank which undertook to and did advance money to pay off the depositors of the former bank — assets so transferred insufficient to repay latter bank for advances made under the agreement — when stockholders of former bank not individually liable under judgment against their bank for the deficiency.

1. Plaintiff brings this action as assignee of the German Bank of Buffalo to recover against the defendants as stockholders in the former Metropolitan Bank of Buffalo their proportionate shares of indebtedness claimed to have been due to the German Bank from the Metropolitan Bank under an agreement between them for the liquidation by the former of the business of the latter. The Metropolitan Bank transferred to the German Bank all of its assets, and the latter bank undertook to and did advance money necessary to pay off the depositors of the former. The assets thus turned over were insufficient to repay the advances thus made together with the compensation agreed to be paid by the Metropolitan Bank to the German Bank for services in connection with the liquidation. Collection of this deficiency is now sought through enforcement of the liability of the stockholders for the debts of the bank in which they held such stock. A judgment was obtained by the German Bank against the Metropolitan Bank of which defendants are stockholders for the money so advanced and services rendered, which it is claimed conclusively established the existence of the debt as against defendants. (Const. of N. Y. art. 8, § 7; Banking Law, § 71 [Cons. Laws, ch. 2]; Stock Corporation Law, § 59 [Cons. Laws, ch. 59].) *Held*, that the liability imposed by statute is of a secondary and exceptional character which is developed only by the unusual contingency that the corporation has become insolvent and unable to pay its debts, and a stockholder should have an opportunity to compel proof of the existence of a claim before he is compelled to pay it. Hence the judgment against the corporation is not conclusive upon defendants as establishing an indebtedness.

2. Previous to the amendment of section 55 of the Stock Corporation Law, now section 59 of that law, it was provided that no

action should be brought against a stockholder for any debt of the corporation until judgment therefor had been rendered against the corporation, and an execution issued thereon had been returned unsatisfied in whole or in part. The amendment provided, "and the amount due on such execution shall be the amount recoverable, with costs against the stockholder." *Held*, that the meaning of the amendment was that the amount due on the execution thus required to be issued should be a limitation of liability and not proof of an indebtedness for which the stockholder is liable.

3. The general rule is that one person who advances money to or for the benefit of or at the request of another has a claim and debt against the latter which may be enforced by personal judgment. But such a promise is only raised by implication from the surrounding circumstances where the parties have left an opening to be filled by such implication, and it is fairly warranted by their acts viewed in the light of ordinary experience. If they have made an agreement expressly and completely setting forth their entire contract, then their rights must be determined by that and not by some implication. The law will not by implication supply or add to a contract unless the parties have invited such assistance and addition by omission expressly to define their obligations. *Held*, on examination of the terms of the contract between the banks, that it does not contain either an express agreement or an implied contract on the part of the Metropolitan Bank to repay the advances to be made for it but that its assets were intended to be the exclusive source of payment for services and repayment for advances made to it, and that the agreement does not furnish a basis of liability for holding its stockholders upon a deficiency in such assets. (*Miller* v. *White*, 50 N. Y. 137, followed; *Huntington* v. *Attrill*, 118 N. Y. 365, 380; *Stephens* v. *Fox*, 83 N. Y. 313, 317, distinguished.)

*Assets Realization Co.* v. *Howard*, 152 App. Div. 900, affirmed.

(Argued April 28, 1914; decided June 2, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 7, 1912, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court after a trial at Special Term.

The action is brought to enforce a liability of stockholders in a state bank for an alleged indebtedness of the bank.

On and prior to August 10, 1901, the Metropolitan Bank was a state bank having its place of business in the city of Buffalo, New York. It had been subjected to a run by its depositors and a representative of the banking department for some time had been overlooking its operations and finally had reached the conclusion to close its doors.

In the light of subsequent events it has been found that the bank then was and for some time had been insolvent, but it was not found or indicated by the evidence that this was appreciated or believed by the people carrying on the subsequent transactions herein referred to. At this time there was also another state bank, the German Bank, doing business in Buffalo, and on the date above mentioned after negotiations between directors and counsel representing respectively the two institutions, an agreement was made providing for a transfer by the Metropolitan Bank of all of its assets to the German Bank, and for the payment by the latter of all of the depositors of the former, and which agreement provided and read as follows:

"THIS AGREEMENT, made this 10th day of August, A. D., 1901, between The Metropolitan Bank, of the First Part, and the German Bank, of the Second Part, both being Banking Corporations organized under the laws of the State of New York, and both located and doing business in Buffalo, Erie County, New York, *Witnesseth :*

"WHEREAS, the party of the first part has been engaged in the banking business for several years last past in Buffalo, and in the course of such business has acquired divers assets of various nature,

"And WHEREAS, it has been thought desirable by its officers and the board of its directors, that it should go into voluntary liquidation, and thereby avoid, so far as may be, the expenses incident to a receivership.

"WHEREAS, the party of the second part is willing to

undertake such liquidation upon the terms hereinafter stated:

" *Now, Therefore,* in consideration of the premises and One Dollar to each of the parties in hand paid by the other, the receipt whereof is hereby acknowledged, it is agreed between the parties hereto as follows:

" *First :* The party of the first part hereby pledges to the party of the second part all and singular its assets, property and effects of every name, nature and kind as security for the advance hereinafter specified, and it agrees that it will when and as requested, by proper assignment and special instrument in each case, make valid transfers of any particular portion of such assets necessary to comply with the statute regarding the recording of instruments and so as to enable the second party to make proper, adequate and easy proof of its rights in the premises.

" *Second :* The party of the second part agrees that it will advance to the party of the first part when and as the same shall be needed, sufficient moneys to pay all depositors of the party of the first part in full. A considerable portion of the assets of the party of the first part consists of real estate located in the City of Buffalo and elsewhere; certain of this property is incumbered. Such sums as shall be needed for the purpose of carrying this property, subject to the limitation hereinafter mentioned, shall also be advanced by the party of the second part when and as the same shall be required.

" Nothing herein contained shall without the consent of the party of the second part require it to pay any portion of the principal secured by either of such mortgages upon the real estate of the party of the first part.

" *Third :* For all advances made by the party of the second part under the preceding paragraph, it shall be entitled to receive interest at the rate of six per centum per annum from the time of the advance until the money advanced be refunded.

28

"*Fourth :* The party of the second part shall also be entitled to receive as compensation for its services in the matter of such liquidation the sum of Twenty Thousand Dollars.

"*Fifth :* In the management of the property of the party of the first part hereinbefore referred to, and in the conversion of its assets, due diligence shall be used to make the conversion as rapidly as it can be done without undue sacrifice.

"The board of directors of the party of the second part shall at all times have the controlling voice as to the method of such conversion.

"*Sixth :* Jacob Dilcher, the president of the party of the first part, shall be employed to assist in the conversion of the assets of the party of the first part and his salary shall be paid out of the assets of the party of the first part hereinbefore referred to, at the rate of Four Thousand Dollars per annum.

"*Seventh :* The legal services incident to the liquidation of the party of the first part shall be performed by Moses Shire and Robert F. Schelling, or by such other counsel as shall be satisfactory to the party of the second part. The compensation for the services so rendered shall be paid out of such assets and the amount thereof shall be subject to audit and approval by both of the parties hereto.

"*Eighth :* Each of the parties shall devote its best energies to the conversion of such assets as speedily as possible, having due regard to the avoidance of sacrifice with respect thereto.

"The books and papers of the party of the first part shall be placed in the custody and control of the second party, subject to the inspection of the party of the first part, or its officers, at all times. The first party shall take no further deposits after this date, and so far as is possible the influence of its officers shall be directed to secure to the party of the second part such accounts

heretofore kept with the party of the first part, as shall be deemed desirable.

"*Ninth :* When the conversion has proceeded to such an extent as to render it necessary, a receivership shall be applied for, if thought best, to dissolve the party of the first part. Such receiver shall be nominated by the party of the second part; and in that event the receiver shall serve to a conclusion without personal charge of fees or commissions. No receivership shall be applied for without the consent of the party of the second part, nor shall any of the assets handed over to it or pledged to it be taken from its possession, except through conversion, until it shall have been fully paid for all sums theretofore advanced by it, including interest thereon and its compensation as hereinbefore fixed.

"*Tenth :* The party of the first part shall change its place of business to the banking office of the party of the second part, subject to the approval of the Superintendent of Banks.

"*Eleventh :* The party of the first part agrees that it will procure and deliver to the party of the second part a proper guaranty of certain of its directors and stockholders against any and all loss which it may in any wise sustain by reason of any advance by it made, pursuant to this agreement. No such guaranty shall render any one director liable for the engagement of another, nor for more than the par value of his stock.

"*In Witness Whereof,* the parties hereto have caused their respective corporation seals and signatures of their respective executive officers to be hereunto affixed the day and year first above written.

"METROPOLITAN BANK

"[SEAL]                    By JACOB DILCHER, *Prest.*

"THE GERMAN BANK

"[SEAL]                    By E. A. GEORGER, *Prest.*"

In accordance with the terms of said agreement the German Bank undertook such liquidation and payment

of said depositors of the Metropolitan Bank whose deposits amounted to upwards of $870,000, and which in the manner mentioned were paid in full.

While the nominal value of the assets transferred to the German Bank was largely in excess of the deposits, their value so shrank on liquidation that they were not sufficient to repay the moneys which had been advanced in paying off the depositors and to satisfy the sum to be allowed for liquidating services, and subsequently a judgment was recovered by the German Bank against the Metropolitan Bank for the sum of $237,289.47, which largely represented this deficiency, the principal amount, however, being somewhat reduced by subsequent realization from assets.

After a while the German Bank also became insolvent, and passed into the hands of a receiver, and subsequently any claim which it had against the Metropolitan Bank, or these defendants as stockholders therein on account of said judgment and transaction hereinbefore stated, was assigned to the plaintiff. Various other facts of importance will be stated in the course of the opinion.

*Carlos C. Alden, Fred D. Corey* and *Warren Tubbs* for appellant. Every principle of equity and fair dealing requires that the stockholders of the Metropolitan Bank make good to plaintiff the balance of the money used solely to pay off the depositors of that bank. (*Bannatyne* v. *McIver*, L. R. [1 K. B. 1906] 103; *Blackburn Bldg. Soc.* v. *Cunliffe*, L. R. [22 Ch. Div.] 61; *Wenlock* v. *River Dee Co.*, L. R. [19 Q. B.] 155; *Matter of Wrexham, etc., Ry. Co.*, L. R. [1 Ch. 1899] 440; *N. B. Society* v. *Luce*, L. R. [43 Ch. Div.] 158; *Matter of Cork & Y. Ry. Co.*, L. R. [4 App. Cas.] 748.) The judgment recovered by the German Bank against the Metropolitan Bank, and founded upon the agreement of August 10, 1901, conclusively fixes the liability of the latter's stockholders, no proof of fraud or collusion having been offered. (*Gates*

v. *Preston,* 41 N. Y. 113; *Newton* v. *Hauck,* 48 N. Y. 676; *Goebel* v. *Iffla,* 111 N. Y. 170; *Belmont* v. *Coleman,* 21 N. Y. 96; *Holland* v. *Duluth Iron Co.,* 65 Minn. 324; *Nichols* v. *Stevens,* 123 Mo. 96; *Bruce* v. *Platt,* 80 N. Y. 379; *Long* v. *Lutz,* 180 N. Y. 254; *Howarth* v. *Angle,* 162 N. Y. 179; *Knickerbocker Trust Co.* v. *Iselin,* 185 N. Y. 54.) Plaintiff established its standing as a creditor of the Metropolitan Bank and the relief demanded in its complaint should have been granted. (*Wallach* v. *Dryfoos,* 140 App. Div. 438; *People* v. *Remington,* 121 N. Y. 328; *De Cordova* v. *Barnum,* 130 N. Y. 615; *Lewis* v. *United States,* 92 U. S. 618; *Canonge* v. *Fuselier,* 10 La. Ann. 697; *Browne* v. *Vredenburgh,* 43 N. Y. 195; *Farron* v. *Sherwood,* 17 N. Y. 227; *Higgins* v. *Newtown, etc., R. R. Co.,* 66 N. Y. 604; *Hartley* v. *Murtha,* 5 App. Div. 408; *Rubin* v. *Cohen,* 129 App. Div. 395.)

*Frank C. Ferguson, William C. Carroll, Vernon Cole* and *Simon Fleischmann* for respondents. The principles of equity and fair dealing do not require that the stockholders of the Metropolitan Bank make good to plaintiff the balance of the money used solely to pay off the depositors of that bank. (*Matter of Wrexham, etc., Ry. Co.* [L. R. 1 Ch. 1899] 440; *Matter of Birkbeck Permanent Benefit Building Society,* 106 L. T. 968; *R. F. & Ins. Co.* v. *Maison Casway, Lim.,* 108 L. T. 87; *Bannatyne* v. *McIver,* 152 L. T. 150; *Browder & Co.* v. *Hill,* 136 Fed. Rep. 821; Beach on Mod. Eq. Juris. § 806; Harris Law of Subrogation, § 797; *Baldwin* v. *Moffett,* 94 N. Y. 82; *Perkins* v. *Hall,* 105 N. Y. 539; *Guckenheimer* v. *Angevine,* 81 N. Y. 394; Sheldon on Subrogation, 42; *German Bank* v. *United States,* 148 U. S. 573.) There was not in the agreement of August 10, 1901, or subsequently, any promise, express or implied, by the Metropolitan Bank that it would itself pay the German Bank the $20,000 for services in liquidating, or repay it anything on account of the advances agreed to

# 438    ASSETS REALIZATION CO. *v.* HOWARD.

be made, and, therefore, there is no "debt' of the Metropolitan Bank, and consequently no individual responsibility of any of its stockholders. The "engagement" of the Metropolitan Bank was that the German Bank might reimburse itself out of the assets and resort to the bond, if necessary. (*Schrader* v. *Manfrs. Nat. Bank,* 133 U. S. 67; *Ward* v. *Joslin,* 186 U. S. 142; Lawson on Cont. 50; 2 Addison on Cont. 23, 1026, 1038; Beach on Cont. §§ 14, 779; *Salisbury* v. *Philips,* 10 Johns. 57; *N. L. Ins. Co.* v. *Mooney,* 108 N. Y. 118; *Jewett* v. *Brownell,* 22 N. Y. S. R. 410; *McNeal* v. *Hayes Machine Co., Inc.,* 118 App. Div. 138; *Cole* v. *M. I. Co.,* 133 N. Y. 164; *Hurd* v. *N. Y. C. & Steam Laundry Co.,* 167 N. Y. 89; *La Montague* v. *Bank of New York,* 183 N. Y. 181; *Lynch* v. *Onondaga Salt Co.,* 64 Barb. 558.) The claim, if any, of the German Bank against the Metropolitan Bank is not a contract, debt or engagement of the Metropolitan Bank upon which a stockholder can be liable within the meaning of the Banking Law. (*Richmond* v. *Irons,* 121 U. S. 27; *Schrader* v. *M. Nat. Bank,* 133 U. S. 67; *Leighton* v. *Knapp,* 115 N. Y. Supp. 1040; *Ward* v. *Joslin,* 186 U. S. 142; *Close* v. *Potter,* 155 N. Y. 145; *Central Trans. Co.* v. *Pullman Co.,* 139 U. S. 24; *California Bank* v. *Kennedy,* 167 U. S. 362; *Knowlton* v. *Congress Spring Co.,* 57 N. Y. 518; *Hart* v. *City of New York,* 201 N. Y. 45; *Johnson* v. *Dahlgren,* 166 N. Y. 354; *Coffey* v. *Burke,* 132 App. Div. 128.) The judgment obtained by the German Bank against the Metropolitan Bank was (1) fraudulent and void as against the stockholders of the Metropolitan Bank and (2) even if not fraudulent was not conclusive or even evidence against them. (*Hirschfield* v. *Bopp,* 145 N. Y. 84; *Breck* v. *Brewster,* 153 App. Div. 800; *Hirschfield* v. *Fitzgerald,* 157 N. Y. 166; *Terry* v. *Little,* 101 U. S. 216; *Marshall* v. *Sherman,* 148 N. Y. 9; *Stephens* v. *Fox,* 83 N. Y. 313; *Farnsworth* v. *Wood,* 91 N. Y. 308; *Thompson* v. *Knight,* 74 App. Div. 319; *Strong* v. *Wheaton,* 38 Barb. 616;

*Berridge* v. *Abernethy*, 24 Wkly. Dig. 513; *Truesdell* v. *Chumar*, 75 Hun, 416; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 72.)

HISCOCK, J.    The plaintiff brings this action as assignee of the German Bank of Buffalo to recover from the defendants as stockholders in the former Metropolitan Bank of Buffalo their proportionate shares of indebtedness claimed to have been due to said German Bank from said Metropolitan Bank.

As has been fully set out in the preceding statement of facts, an agreement was made between these two banks for the liquidation by the former of the business of the latter.    The Metropolitan Bank transferred to the German Bank all of its assets, and the latter bank undertook to and did advance the money necessary to pay off the depositors of the former.    It transpired that the assets thus turned over were not sufficient by a large amount to repay the advances thus made together with a compensation of $20,000 for services, and collection of this deficiency is now sought through enforcement of the liability of the Metropolitan stockholders for the debts of the bank in which they held such stock.

At all the times in question the Constitution (Art. VIII, section 7) provided, "The stockholders of every corporation and joint stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind," and section 71 of the Banking Law (Cons. Laws, ch. 2), provided, "Except as prescribed in the Stock Corporation Law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Section 55 of the Stock Corporation Law ([Cons. Laws, ch. 59], now section 59) provided: "Limitation of Stockholder's Liability. No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall be the amount recoverable, with costs against the stockholder. No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder."

The two propositions which the appellant must establish are, first, the character of the persons sought to be charged, as stockholders in the Metropolitan Bank; and, secondly, the existence of a debt or liability on the part of such bank to the German Bank while they were such stockholders. The last proposition, around which most of the conflict in the case has centered, is the only one which it will be necessary to discuss.

It is first urged by the appellant that the judgment which the German Bank recovered against the Metropolitan Bank by default and which included money advanced in paying depositors over that realized from assets, also the sum of $20,000 for liquidation services and also the sum of about $40,000 claimed to be due on a note, and which judgment amounted to $237,289.47, conclusively established the existence of such a debt for the purposes of this action against the stockholders and that, therefore, the question of the existence of an indebtedness may not in this action be examined at all.

That was an ordinary action to recover a money judg-

ment and of course the defendants were not in any manner parties to it, and it is insisted on their part that as against them the judgment is not conclusive evidence of a debt or liability for which they may be held in this action. We think that their contention is sustained by reason and by authorities which should be controlling.

In the first place, if that question should now be regarded as open to discussion, I see no just reason for holding that the judgment against the bank established as against these defendants the existence of a debt for which they are liable. The constitutional and statutory provisions to which reference has been made, make a stockholder liable for the debts of the corporation. If it be once established that he is a stockholder within the meaning of those provisions then generally speaking liability for its debts inevitably follows.

This liability of a stockholder has been variously described. Sometimes it has been said that it results from a preservation of the liability of individuals which otherwise would have been merged and lost through the process of incorporation. Sometimes it is queried whether the liability is that of a surety or a principal debtor. Sometimes it has been written that the liability is of a statutory character and at other times of a contractual character assumed by an individual when he became a stockholder under the laws governing the subject of stockholding. (*People ex rel. Winchester* v. *Coleman,* 133 N. Y. 279, 284; *Miller* v. *White,* 50 N. Y. 137; *Howarth* v. *Angle,* 162 N. Y. 179, 187.)

But whatever the technical nature of the liability may be, there can be no question that in its practical aspects and consequences it is of a secondary and exceptional character which is developed only by the unusual contingency that the corporation has become insolvent and unable to pay its debts. (*Hirshfeld* v. *Bopp,* 145 N. Y. 84, 92.)

Under such circumstances it should be governed by

fair rules and should not be extended or imposed in violation of the plain dictates of ordinary justice. (*Chase* v. *Lord*, 77 N. Y. 1, 18.)

This claim against a stockholder is not an asset belonging to, or coming through or asserted in behalf of, the corporation. It is given to the creditor as an independent and original remedy. The stockholder in respect of this liability is the only one who is interested in the question whether there is an indebtedness; the corporation has no practical interest in it. The stockholder is not a proper party to the action brought against the corporation and the corporation does not in any direct or real sense represent him as to this liability; the extent of its interest is to protect the corporate assets. Therefore, it comes about that unless in the action to charge him the stockholder may dispute and try the issue of indebtedness, he may very easily and probably be subjected to this onerous and unusual liability and compelled to pay an alleged debt which never existed and which has never been contested.

It seems to be conceded that this theory of conclusive effect on a stockholder of a judgment against the corporation opens up to allow proof that the judgment was secured by fraud or collusion. But why confine the exceptions to this class? It is of no material consequence to the stockholder who is asked to pay an unjustified judgment whether it resulted from fraud or whether as alleged in this case it was negligently or ignorantly allowed to be entered by default on claims which either never existed or had been fully paid. What he desires and as it seems to me plainly ought to have, is an opportunity to compel proof of the existence of a claim before he is compelled to pay it.

In the second place, I think that the fair weight of authority is in favor of this view, and that, subject to a later statutory amendment hereafter to be considered, it is sustained by the following cases: *Moss* v. *McCul-*

*lough* (5 Hill, 131); *Strong* v. *Wheaton* (38 Barb. 616); *Miller* v. *White* (50 N. Y. 137); *Truesdell* v. *Chumar* (75 Hun, 416). (See, also, *McMahon* v. *Macy,* 51 N. Y. 155.)

Of course I do not overlook the fact that in *Miller* v. *White* the court had under consideration the liability of the directors of a corporation predicated on failure to file a report, but in reaching its conclusion the court so fully reviewed the authorities concerning, and so adopted the principles involved in, the present question that it must be regarded as a pertinent and authoritative decision on this subject.

Neither do I overlook the cases cited by the learned counsel for the appellant as direct authorities for a contrary view of this proposition. (*Slee* v. *Bloom,* 20 Johnson, 669; *Moss* v. *McCullough,* 7 Barb. 279; *Moss* v. *Averell,* 10 N. Y. 449; *Belmont* v. *Coleman,* 21 N. Y. 96; *Conklin* v. *Furman,* 57 Barb. 484.) It is to be noted, however, that what was said in a majority of these cases on this point was either irrelevant or does not appear to have been approved by a majority of the judges, and that those cases directly and really passing on the question must be regarded as overruled by the later decisions to which reference has been made.

In addition to these cases last referred to appellant's counsel refers to other authorities as sustaining by analogy and indirectly his position on the present question, and brief reference will be made to two of those cases which seem to be regarded as most important.

*Huntington* v. *Attrill* (118 N. Y. 365, 380), which sustains the proposition that the books of a corporation are evidence against its directors of a loan, is cited with the argument that if books of a corporation are evidence, certainly a judgment against it ought to be evidence. But the radical trouble with the analogy thus sought to be drawn is that the stockholders were not in any manner parties to or responsible for the judgment, whereas the

books were offered in evidence against the corporate directors and officers who were in control of them and, therefore, properly bound by their contents.

*Stephens* v. *Fox* (83 N. Y. 313, 317) was an action by a creditor to collect of a stockholder an amount equal to the amount unpaid on his stock in accordance with the statutory provisions on that subject, and it was held that a judgment recovered against the company was competent evidence of plaintiff's status as a creditor and of the amount due him. But this conclusion was based upon the proposition that the creditor was simply subrogated to the claim of the corporation against its debtor, and it was written, "The creditor thus claims through the corporation, and to entitle him to his statutory subrogation or transfer, he need only show that he is a creditor. If he shows this fact by evidence which is binding and conclusive against the corporation, such evidence should be competent against the stockholder to establish the title of the creditor to succeed to the rights of the corporation," and then indicating as plainly as it is necessary to do the difference between that case and this, reference is made to the case of *Miller* v. *White* (*supra*), and it is written that in that case "the defendant was not pursued as a debtor to the corporation, or for any pre-existing liability of his own, but upon an original liability created by the statute, and it was not in the power of the corporation to admit away his case, or suffer a recovery which should be binding upon him, and create, as against him, a liability to which he was not previously subject."

It is somewhat argued that the force of the foregoing authorities is destroyed by an amendment adopted in 1890 to section 55 of the Stock Corporation Law, now section 59 of the Stock Corporation Law as found in the Consolidated Laws. Previous to this amendment it was provided that no action should be brought against a stockholder for any debt of the corporation until judgment therefor had been rendered against the corporation and

an execution issued thereon had been returned unsatisfied in whole or in part. The amendment then provided, "and the amount due on such execution shall be the amount recoverable, with costs against the stockholder."

It is asserted that this amendment is equivalent to saying that the judgment and execution shall be all the evidence that is necessary to fix the amount recoverable from the stockholder. That interpretation does not appeal to us. The section now containing said amendment is entitled "Limitation of Stockholder's Liability." It contains the requirement as limiting the stockholder's liability that a judgment must be recovered and execution issued before such liability attaches. Under these circumstances, I think that the meaning of the amendment was that the amount due on the execution thus required to be issued should be a limitation of liability and not proof of an indebtedness for which the stockholder is liable.

Having reached the conclusion that the judgment referred to did not furnish the necessary proof of an indebtedness against the Metropolitan Bank, for which respondents as stockholders are liable, we are brought to a consideration of the inquiry whether other evidence which was produced did establish such indebtedness. At the outset of this inquiry one of the items of alleged indebtedness may be briefly and finally eliminated from consideration. The Metropolitan Bank borrowed and gave its note to the German Bank for $50,000. Upwards of $40,000 of this amount was included in the judgment and is now asserted to be a debt against the bank. It was found by the trial court that this note and debt had been paid in full, and inasmuch as that finding has been unanimously affirmed there is no opportunity for further discussion.

The inquiry therefore narrows itself to a search for proof that a personal claim accrued against the Metropolitan Bank for moneys advanced to pay depositors and for liquidation services provided for in the agreement which consti-

tute a debt begetting liability of stockholders. In my opinion these two items are governed by the same considerations and therefore it will not be necessary at all points explicitly to mention both of them in what may be said.

The question whether these advances and services not repaid or satisfied from the assets transferred to the German Bank did constitute an indebtedness will be determined by the interpretation to be given to the agreement made by the banks. It is undoubtedly the general experience and rule that one person who advances money to or for the benefit of, or at the request of another has a claim and debt against the latter which may be enforced by personal judgment. It may be assumed that a bank in the ordinary course of business furnishing money to another although taking back securities would have a claim for the moneys so advanced which might be prosecuted by action either before or after resort to the securities. The circumstances surrounding such a transaction are generally such that in the light of common experience they imply a promise to repay even though the parties have failed to express one. But such a promise is only raised by implication from the surrounding circumstances where the parties have left an opening to be filled by such implication, and it is fairly warranted by their acts viewed in the light of ordinary experience. If they have made an agreement expressly and completely setting forth their entire contract, then their rights must be determined by that and not by some implication. The law will not by implication supply, or add to, a contract unless the parties have invited such assistance and addition by omission expressly to define their obligations. Under these familiar principles I do not think there is any room for what, generally speaking, would be termed an implied promise by the Metropolitan Bank to repay advances. In the first place I doubt considerably whether in the absence of an express agreement the law

would have implied such a promise. The transaction was an unusual one. It was not the case of an advance by one bank to another in the ordinary course of business and which would be governed by ordinary usages, but the liquidation and permanent retirement from business of a bank. The liquidating bank was turning over to the liquidator all of its assets of every possible kind and the latter was undertaking to pay off the former's depositors concededly holding the assets as a fund for its repayment. The transaction as an entirety bore closer kinship to a transfer by a debtor of his property in trust to pay his debts than it did to a loan of money with a personal promise of repayment. Obviously there was no benefit to be derived from such promise so far as the liquidating bank was concerned for it had already turned over all of its property, and it would seem as though the law was looking a good way forward if it implied this promise simply as a basis for holding stockholders liable in case there should be a deficiency of assets turned over.

But however this might be, the other principle referred to applies. There is no room for implied promises. This, as has been stated, was an unusual transaction and the parties acting with prudence expressed their undertaking in a written contract. That contract appears on its face to be a carefully considered instrument and I think we must assume that it was intended to be a full and complete statement of the respective rights and obligations of the respective parties, and that by its provisions, construed of course in the light of surrounding circumstances, we must determine whether the appellant's theory of a debt against the Metropolitan Bank is well founded and, therefore, to the consideration of this instrument we now proceed.

After reciting the desire by the officers and directors of the one bank that it should go into voluntary liquidation and the willingness of the second bank to undertake such liquidation, it is agreed that the first bank (the Metropoli-

tan Bank) "pledges to the party of the second part (the German Bank) all and singular its assets, property and effects of every name, nature and kind as security for the advances hereinafter specified," and it is agreed by the other bank, as party of the second part, "that it will advance to the party of the first part   *   *   *   sufficient moneys to pay all depositors of the party of the first part in full."

Full and complete provision is then made for the possession and control in the process of liquidation by the German Bank of the assets which were transferred as security for the repayment of the advances made by it. Amongst other things, it is provided that the directors of said bank "shall at all times have the controlling voice as to the method of such conversion," of said assets; they are to be assisted by the president of the Metropolitan Bank in such conversion; legal services incident to the liquidation are to be performed by counsel named in the agreement "or by such other counsel as shall be satisfactory to the party of the second part ; " the books and papers of the liquidating bank are to be placed in the custody and control of the German Bank; in case eventually a receivership becomes necessary such receiver is to be nominated by the German Bank and no receivership is to be applied for and no assets are to be taken from the possession of the German Bank without its consent "until it shall have been fully paid for all sums theretofore advanced by it."

As we read these and some other related provisions we are inevitably impressed with the thought that at least the German Bank was looking to these assets as the important source from which repayment of its advances and satisfaction of its claim for services were to be made. It carefully safeguarded possession and complete control and management of them and none of them, in the contingency of a receivership, were to be taken from its possession until it should have received payment in full " for

all sums theretofore advanced by it." Here at least is a specification and emphasis of the one important means of repayment.

Then as we proceed further with an examination of the contract we are impressed with the view that these assets were not only the important source of repayment, but that they were the exclusive one so far as concerns any personal claim against the Metropolitan Bank. This latter view is in my opinion clearly sustained by the absence from as well as presence in the agreement of certain provisions.

This agreement shows no signs of haste or bungling in its preparation. It was not the inartificial or uncertain production of laymen, but the plain and comprehensive work of counsel who we may assume, as in fact we know, were competent and skillful first to formulate the terms of a contract between their clients covering an important and unusual transaction and then completely to reduce that contract to writing. It is not to be presumed that they forgot to consider all the sources from which the German Bank might or would seek repayment, and if it was the intention and agreement of the parties that a deficiency claim should be preserved against the Metropolitan Bank, it is impossible to believe that some simple clause would not have been inserted in the agreement clearly and explicitly so providing. From the care which was taken to defend the rights of the parties in respect of the assets, it is not to be credited that such a deficiency clause would be forgotten, or, if not forgotten, omitted on some vague theory that it was unnecessary. No such provision was inserted and its absence is extremely significant.

I do not forget that the appellant places much reliance on the terms "advance" and "security," used in various connections in defining the obligations and rights of the German Bank, as naturally implying a loan with a prom·

ise of repayment. I do not think, however, that these words have any such necessary and controlling significance as would be given to them. They undoubtedly might be appropriately used in describing an advance by way of loan which was secured by collateral but they also may fairly be used in speaking of a transaction where one person has furnished funds in anticipation of and to be repaid later from some source, not necessarily including a personal responsibility, which secures or assures and, therefore, is security for such a repayment.

Again, as has already been stated, the only object in preserving such a claim against the bank was for the purpose of establishing liability on the part of the stockholders. The bank was transferring everything it had and a deficiency claim and judgment against it could squeeze nothing further from its corporate body. But a liability against the stockholders could only be established by virtue of an agreement with the bank which would create an indebtedness valid not only against the corporation which indirectly received the money but also as against the stockholders. The counsel who was preparing this agreement could hardly fail to foresee in some measure what has actually happened, that a stockholder not consulted about this unusual transaction and prosecuted on an alleged stockholding liability would question the power of a board of directors to make such a contract and dispute the validity of the agreement as a basis for indebtedness against the bank on which he could be thus pursued. Yet no effort is recited or was made to have the stockholders authorize or ratify and thus become parties to and bound by this agreement. Apparently they were disregarded and their liability not considered essential or desired or intended in addition to the assets. On this theory we can account for a failure to consult them and to insert a clause making the Metropolitan Bank liable for a deficiency, and on this theory alone can we explain the final and significant provision for delivery to the Ger-

man Bank of an agreement guaranteeing it from loss to be executed by certain stockholders who were directors and binding them to the amount of their respective stock holdings. If the parties believed that they were laying the foundation for and preserving a deficiency claim against the bank which would be an indebtedness within the limits of a stockholder's liability, there was no rational, intelligent explanation for this clause. It can hardly be reasoned that the counsel preparing this agreement were so trustful or negligent that one moment they utterly failed to provide for and express a deficiency claim which the parties intended to preserve against the bank and the next moment so cautious that they explicitly provided for an agreement setting forth a liability of stockholders which was already fixed, if appellant's theory is correct, by the Constitution and statutes. Neither can it be argued that the agreement for this liability was reduced to writing so as to cut off a defense and evasion by the parties signing it, for the parties signing this were directors who authorized and were parties to the agreement, and they, unlike the other stockholders, could not well claim that their acts were *ultra vires* or otherwise invalid. The only explanation which fairly and adequately accounts for this provision is the one that the parties knew that they were not constructing or preserving a possible claim and debt against the bank which would be the basis for prosecuting the stockholders, and, therefore, intended by express agreement to hold the directors who were parties to and interested in carrying out the arrangement.

Neither are we impressed with the force of the suggestion that the extent of the guaranty secured by this agreement, amounting to nearly $60,000, was so small that it cannot be believed that the German Bank was willing to take it as the only individual guaranty against loss by reason of deficiency in assets. Taken in connection with the apparent surplus of assets over all liabilities amounting to $250,000, to which further reference will

be made, it may very well have been considered a substantial and sufficient protection against any unexpected losses incident to the process of liquidation.

Lastly, it is urged as throwing much light on the interpretation of this contract, that the officers of the German Bank must have appreciated that there was liable to be a large shrinkage in the liquidation of the assets of the Metropolitan Bank, that there was no consideration for their undertaking any risk in this enterprise, and, therefore, it should not be assumed or believed that they intended to disregard or waive any protection such as a claim against the bank for a deficiency on which the stockholders might be held liable. This argument, in my judgment, is based more on considerations which developed after the agreement than on the facts which were apparently present in the minds of the officers of the German Bank when the agreement was made. We know now, for it has been found by the trial court, that the Metropolitan Bank was and for some time had been insolvent when this agreement was made. But nothing is found or shown which indicates that the parties had any such idea when they entered into the agreement. It is true that the Metropolitan Bank was having trouble in meeting the demands of its depositors, but it appears that a large amount of its assets was locked up in real estate which could not be readily converted into cash and every one knows that even a large line of bills discounted cannot be turned to cash on demand, and hence the necessity for making some provision for paying off depositors if assets were not to be sacrificed. Since the learned counsel for the appellant especially calls attention to it as established by the evidence, we are justified in considering the fact, although not embraced in the findings, that before this agreement was made the officers of the Metropolitan Bank presented to the officers of the German Bank a statement which showed that the former institution not only had sufficient assets with which to

meet all of its ordinary liabilities but that it had an unimpaired capital of $200,000 and a surplus of $50,000. There were conferences between the officers of the two banks and this statement was examined by the officers of the German Bank and the assets were examined and checked up therefrom. Therefore with the agreement or guaranty by the directors already referred to there was a margin of over $300,000 as a protection against loss by reason of shrinkage of assets. The assets shown by the statement amounted to something in excess of $1,300,000, and, therefore, the margin referred to provided for a shrinkage of about twenty-five per cent in the value of these assets before any actual loss could accrue to the bank.

There was not such a lack of consideration for the assumption of reasonable risks by the German Bank in this enterprise as is suggested. It was to receive a full rate of interest on its moneys and $20,000 for its services. But in addition to this, it is evident, as we know might be the case under such circumstances, that the German Bank was anxious so far as possible to take over and secure the business which the Metropolitan Bank had been carrying on. The latter's deposits at the time amounted to nearly $900,000. This desire is clearly and at times explicitly evidenced by the terms of the agreement and by the method of liquidation pursued under it. The former president of the Metropolitan Bank was employed to assist the German Bank in liquidating its assets; the place of business of the Metropolitan Bank was to be transferred to the banking office of the German Bank; the Metropolitan Bank was to take no further deposits after the execution of the agreement and so far as possible the influence of its officers was to " be directed to securing to the party of the second part (the German Bank) such accounts heretofore kept with the party of the first part (the Metropolitan Bank), as shall be deemed desirable; " the checks made out under the agreement in

payment of the deposits of the Metropolitan Bank were presented and paid at the office of the German Bank.

We thus find that the undertaking of the German Bank was by no means a purely charitable enterprise, and this is not said by way of criticism.  It had a perfect right if it desired to take advantage of the situation for the purpose of increasing its own business and this purpose in connection with the cash consideration which it was to receive for its services did not leave the occasion entirely bereft of inducements which might move the German Bank to desire to make the agreement which was finally formulated and to be willing to undertake any reasonable risk proportionate to the benefits which it doubtless expected to derive.  Consequently we are not to measure the exactions and protection which it might demand by the test of a gratuitous favor being done, but rather by those considerations which might surround the execution of a contract from which each party expected to derive benefits and under which it would be willing to take the ordinary risk incident to a business enterprise.

And practically the same answer may be made to the argument that the German Bank having paid off the deposits of the Metropolitan Bank which would have constituted an indebtedness for which these defendants would have been liable, strong equitable considerations require that the appellant as assignee should be in effect subrogated to the same rights.  This depends on what the parties intended and agreed to do.  If the German Bank in place of depositors whom it paid had clearly designed and attempted to preserve a claim against the Metropolitan Bank and its stockholders, effectuation of which was imperiled by reason of inapt or defective provisions, I should think that we could fairly be asked to labor some in the attempt to so construe the contract as to carry out the intention of the parties.  But if, as we think, the German Bank, in undertaking this transaction was satis-

fied to ignore such a claim and rely wholly on other assurances of repayment and protection there is no warrant for constructing for the parties out of supposed equitable principles a contract which they did not deem it worth while to make for themselves.

The construction of such a contract as this is governed by the application of familiar principles. The great question is not concerning principles but concerning their application to the particular agreement under review. Hence not much can be gained by citation of authorities. Reference, however, may be made to the following decisions as tending in a general way to sustain the conclusion that this contract did not create but excluded a personal liability on the part of the Metropolitan Bank which will bear up this action. (*Lynch* v. *Onondaga Salt Co.*, 64 Barb. 558, 560; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82, 86; *N. W. Mut. Life Ins. Co.* v. *Mooney*, 108 N. Y. 118, 124; *Mathew* v. *Blackmore*, 1 Hurlst. & Norman, 762, 771.)

Other important questions were considered in the elaborate and very able opinion of the trial justice and are now argued in the similarly meritorious briefs of counsel, but we do not consider these, however interesting, since the conclusion reached concerning the question which has been discussed disposes of the appeal and leads to an affirmance of the judgment.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, CUDDEBACK, MILLER and CARDOZO, JJ., concur.

Judgment affirmed.