*177 OPINION OF THE COURT
David Friedman, J.
Section 630 of the Business Corporation Law makes the 10 largest shareholders of closely held corporations personally liable for the payment of contributions to welfare and pension funds due its employees. Before an action to impose such personal liability may be commenced a judgment for the contributions must be obtained against the corporation with execution on the judgment returned unsatisfied. This action is brought against a large shareholder in order to collect on a judgment obtained against the corporation. The issue raised by the motion pending before the court is whether the large shareholder is precluded from collaterally attacking the judgment.
Edison Business Communication Services, Inc. (Edison) and Local 1109 Communications Workers of America entered into an agreement under which the former was to make monthly contributions to welfare and pension funds maintained for its employees. Edison failed to make the required contributions from August 1986 through February 1989. Acting under the Employee Retirement Income Security Act of 1974 the trustees of the two funds brought an action in the United States District Court for the Eastern District of New York seeking to recover unpaid contributions for this period.
Edison defaulted in the action and in an order dated August 22, 1989 the court (Nickerson, J.) made the following observations:
"An attorney has written a letter date [sic] June 15, 1989 to the court stating that he has been retained by defendant and that defendant concedes its obligation to make contributions but disputes the amount. No affidavit from any principal of the defendant has been submitted. Indeed, the lawyer suggests no evidence showing that plaintiffs’ monthly calculations are incorrect.
"The action was brought on February 9, 1989, and personal service on defendant effected March 31, 1989. The motion, made returnable May 30, 1980 [sic], was adjourned at the request of defendant’s lawyer to June 16, 1989. The belated letter of the lawyer dated June 15, 1989 is insufficient to put in issue plaintiffs’ calculations of past due contributions.
"The clerk is directed to enter judgment”.
On August 30, 1989 a judgment was entered in the United States District Court granting plaintiffs’ motion for a default *178 judgment in the sum of $50,468.42. Execution on the judgment was returned unsatisfied by the Sheriff of Suffolk County on February 13, 1990.
Thereafter, the trustees promptly commenced this action against Douglas Segall, as 1 of the 10 largest shareholders of Edison, seeking to recover from him $23,520 plus interest for unpaid contributions to the funds for the period of August 1988 through February 1989. The trustees now move for summary judgment.
In support of the motion the trustees rely upon an affidavit from Jeanette Patella, an assistant fund manager. She avers that under the controlling collective bargaining agreement Edison was required to submit monthly contribution reports and payments to the funds. These reports list the names of employees for which contributions are made and the number of hours worked per month by each employee. Commencing with August 1988 Edison failed to submit the required reports so that she relied on the July 1988 report to calculate how much was due the funds. This report listed 12 employees for whom contributions were due. Welfare fund benefits were provided for these 12 employees which included the payment of insurance premiums. She calculated that based upon the 12 employees $19,440 was due the welfare fund and $4,080 the pension fund. In addition Patella indicates she sent Segall a letter on February 2, 1989 that he would be held personally liable for unpaid contributions.
In opposing the motion defendant Segall contends that for the months of August through November 1988 Edison had only three employees while in December 1988 it was effectively defunct. Thus Patella’s calculations of the amount due are premised on erroneous assumptions. Segall contends further that the Federal judgment upon which this action is premised should not be binding on him because different time periods are involved in the two suits[1] as well as different parties, i.e., he was not a party to that suit. Finally, Segall points to Assets Realization Co. v Howard (211 NY 430) in support of his position that he should now be allowed to undermine the judgment entered in Federal District Court upon which this action is premised (cf., Graeber v Ehrgott, 182 App Div 377).
*179 In deciding whether Segall should in fact be permitted to collaterally attack the judgment against Edison divergent outlooks appear in applicable precedents. In Assets Realization Co. v Howard (supra, at 442), a 1914 case, statutory provisions similar to the one at bar were in issue. In supporting the view that a stockholder could avoid being held responsible for a judgment against the corporation the court stated "It seems to be conceded that this theory of conclusive effect on a stockholder of a judgment against the corporation opens up to allow proof that the judgment was secured by fraud or collusion. But why confine the exception to this class? It is of no material consequence to the stockholder who is asked to pay an unjustified judgment whether it resulted from fraud or whether * * * it was negligently or ignorantly allowed to be entered by default on claims which either never existed or had been fully paid. What [the stockholder] desires and * * * ought to have, is an opportunity to compel proof of the existence of a claim before he is compelled to pay it.”
On the other hand recent statements of the doctrine of collateral estoppel have barred relitigation of an issue necessarily decided in a prior action where there was a full and fair opportunity to contest that issue (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 71). Nor is this view altered by the fact that the prior action was decided on default (Tantillo v Giglio, 156 AD2d 664). Thus the emergent issue relates to the interplay of Business Corporation Law § 630 with a judgment reflecting sums due from a corporation to welfare and pension funds vis-á-vis the doctrines of res judicata and/or collateral estoppel. In my view and notwithstanding indications to the contrary in Assets Realization Co. v Howard (supra), section 630 bars relitigation of matters necessarily determined by the judgment for which there was a full opportunity to litigate.
This conclusion is mandated when consideration is given to the nature of an action brought pursuant to section 630. In Sasso v Vachris (66 NY2d 28, 33) the court stated, "[S]ection 630 is remedial in nature; it provides an additional enforcement mechanism by which plaintiffs can recover delinquent contributions already due and owing to them pursuant to the corporation’s obligations under * * * collective bargaining and *180 trust agreements.” Its aim is to safeguard the employees of insolvent corporations so that they are not left without recourse and payment for their services (Herman v Levanne, 77 Misc 2d 653, 654, affd 79 Misc 2d 799; Lindsey v Winkler, 52 Misc 2d 1037, 1038).
A section 630 action is therefore regarded not as a renewed determination on the merits but rather as an enforcement mechanism to protect the employees of closely held corporations. In the case at bar it is uncontroverted that the Federal District Court action included a claim for the benefits now sought and that there was an opportunity to contest entitlement to those benefits. However, as indicated by the order of Judge Nickerson, a decision to default was made by Edison’s lawyer who interestingly also represents Segall in this action. To conclude under these circumstances that the right to benefits must be established anew would eviscerate the very remedy section 630 seeks to effectuate.
This conclusion is further buttressed when Segall’s opposition to the motion for summary judgment is examined at least insofar as welfare fund contributions are concerned. It is the trustees’ position that based upon the information furnished by Edison they were required to provide benefits for 12 employees and in fact paid insurance premiums to provide benefits for that number of employees. Segall maintains that for the time frame involved here Edison no longer had 12 employees and therefore he should not be responsible to pay the contributions for so many employees.
Segall thus seeks to defeat the motion for summary judgment by creating a question of fact concerning the number of employees. His position, however, does not bear scrutiny. This is because regardless of the number of employees Edison may have had after August 1988 there is no proof offered that the welfare fund was timely notified of a decrease in the number of employees so as to terminate Edison’s responsibility to pay for 12 employees. The untenability of Segall’s position is made even starker when consideration is given to the fact that the welfare fund actually continued to pay insurance premiums *181 for 12 employees. In view of this scenario the inescapable conclusion is that Edison and Segall derivatively, via section 630, are liable for contributions to the welfare fund based on a count of 12 employees.[2]
Accordingly, the motion for summary judgment is granted.

. Little discussion of the time discrepancy is warranted. It would appear that the trustees could not sue under Business Corporation Law § 630 for a period contemporaneous with the Federal action because of the time limitations contained in section 630.

. As to sums due to the pension fund it cannot be determined from the submissions whether any money was actually segregated by the fund for such purpose and, if so, whether it was on behalf of discharged employees. Moreover, there is no indication whether any money set aside on behalf of discharged employees could be recouped. These issues are academic, however, in view of the Federal District Court judgment and the effect given to it here.