[No. 4732.   Decided December 20, 1904.]

J. B. BENNETT, *as Receiver of the Puget Sound Loan, Trust & Banking Company, Respondent,* v. CHESTER THORNE *et al., Appellants.*[1]

APPEAL—JURISDICTION—AMOUNT IN CONTROVERSY—ACTION IN EQUITY — PROCEEDING TO ASSESS STOCKHOLDERS IN INSOLVENT BANK. A proceeding to assess stockholders of an insolvent bank upon their superadded liability to creditors, instituted by the petition of the receiver, filed in the receivership action, is an equitable proceeding, and an appeal lies to the supreme court from the order levying the assessment irrespective of the amount in controversy, since it is only in civil actions at law for the recovery of money that the appellate jurisdiction is limited by the amount.

APPEAL—PARTIES ENTITLED TO APPEAL—ASSESSMENT OF BANK STOCKHOLDERS. Stockholders of an insolvent corporation are par-

[1]Reported in 78 Pac. 936.

ties entitled to appeal from an order levying an assessment upon their liability to creditors, entered upon a petition filed in the receivership action, where they were, by order of court, served with notice of the hearing, and appeared and contested the matter as stockholders, although they were not nominal parties to the action, and were not named in the petition for the assessment, and the question as to who held the stock was not determined; since the special proceeding affected the rights of stockholders and concluded all who were before the court at the hearing.

APPEAL AND ERROR—APPEALABLE ORDERS—SPECIAL PROCEEDING TO LEVY ASSESSMENT AGAINST STOCKHOLDERS. Where the right to levy an assessment against stockholders of an insolvent bank, and the amount of such assessment, is determined by the court upon a petition filed in the receivership action, after notice to the stockholders and a hearing, at which the stockholders appeared and demurred to the petition and evidence was introduced in support of the allegations, the order fixing the amount and levying the assessment, is appealable as a final order or judgment in a special proceeding in which the receiver for the creditors on the one hand, and the stockholders on the other hand, are the adverse parties and finally concluded by the matters determined in the order.

BANKS—LIABILITY OF STOCKHOLDERS TO CREDITORS—LIMITATION OF ACTIONS—WHEN RIGHT OF ACTION ACCRUES. The superadded liability of stockholders to the creditors, under the constitution, attaches and a right of action thereon accrues to the receiver immediately upon the declared insolvency of the bank.

PRINCIPAL AND SURETY—LIMITATION OF ACTIONS—ACCRUAL. A cause of action against a surety accrues upon the default of the principal.

BANKS—LIABILITY OF STOCKHOLDERS TO CREDITORS—LIMITATION OF ACTIONS—EXHAUSTING ASSETS OF INSOLVENT CORPORATION. The rule that the stockholders' liability to creditors for the debts of the corporation is secondary has no application to the limitation of actions, but only to the equitable application of the funds, and does not require that the primary assets be exhausted and applied before recourse be had against the stockholders.

LIMITATION OF ACTIONS—TOLLING THE STATUTE—STOCKHOLDERS' LIABILITY—DELAY OF RECEIVER. It is against the policy of the law to put it within the power of a party to toll the statute of limitations, and the failure of a receiver to take the necessary steps to enforce the stockholders' liability does not prolong the statute; hence where no steps are taken until the assets are all exhausted,

seven years after the receiver's appointment, the right of action is barred.

· BANKS — STOCKHOLDERS' SUPERADDED LIABILITY — ASSESSMENTS. Constitution art. 12 § 11, providing the additional liability of stockholders in banking corporations, does not require the levy of any assessment as a condition precedent to action against the stockholders, and the right of action is not postponed until an assessment is made, as in the case of stock subscriptions and cases under the national banking act.

Appeal from an order of the superior court for Whatcom county, Neterer, J., entered Feb. 9, 1903, levying an assessment against the stockholders of an insolvent bank, after overruling their demurrers, and a hearing upon the merits upon the petition of the receiver, filed in the receivership action.   Reversed.

*F. S. Blattner* and *Harvey L. Johnson,* for appellant Thorne.

*T. O. Abbott,* for appellants McClaine et al.

*Brown & Rose,* for respondent.

FULLERTON, C. J.—This is a proceeding to assess stockholders of an insolvent bank upon their superadded liability to creditors, as imposed by the state constitution, instituted by a petition of the receiver filed in the receivership action.

The Puget Sound Loan, Trust & Banking Company was incorporated under the laws of this state in 1890 to do a banking business at Whatcom, and was engaged in such business in 1895, at which time it became insolvent.   In November, 1895, Charles W. Roberts commenced an action against the bank, in the superior court for Whatcom county, for the purpose of having a receiver appointed, and on December 7, 1895, the respondent, J. B. Bennett, was appointed receiver, and ever since has acted as such, under the orders of the court in that action.

On the 7th day of November, 1902, the respondent filed, in the receivership action, his duly verified petition, alleging that he was, on the 7th day of December, 1895, duly appointed receiver of the bank, and of all its property and assets of every kind and character; that by the order appointing him, he was authorized and empowered, in his own name as such receiver or in the name of the corporation, to commence and prosecute all suits, actions, and proceedings that to him might seem necessary or proper for the enforcement of any and all rights, claims, or demands of the corporation or its creditors; that the capital stock of the bank was $125,000, divided into 1,250 shares of the par value of $100 each; that the same was held by divers persons, some of whom were residents and some nonresidents of the state; that the stock was all duly subscribed and paid for, as he was informed and believed; that the debts of the corporation were in excess of $55,000, all of which (except $1,000) had been duly allowed as claims against the corporation; that the amount of debts of a strictly banking character then remaining unpaid was $32,102.97, with interest thereon at the rate of six per cent per annum from the date of the receivership.

The petition further alleged that all the assets of the corporation had been reduced to cash, the last assets being sold February 15, 1902; that, during the receivership, dividends for the creditors had been declared by the court and paid, amounting to thirty-two per cent of the claims, and that most of the creditors had received such dividends, and receipted therefor. The petition concludes with the allegation that the corporation is insolvent, and that, aside from the superadded liability of stockholders prescribed by the constitution, it is unable to satisfy or discharge the debts or claims of its creditors; that no proceedings had as yet been had

in any court for the enforcement of this superadded liability, and that it was necessary, in order to pay the debts of the corporation, to enforce such liability.

The prayer of the petition was, that the amount of the debts of the corporation be ascertained; that the court ascertain the amount necessary to be collected from each stockholder in order to satisfy and discharge such debts; that the court make an order in the action assessing such stockholders upon such liability, and that they each be adjudged to be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of the corporation, accruing while they remained such stockholders.

Upon the filing of this petition, November 7th, 1902, the court made an order fixing the 8th of December, 1902, as the time for hearing the same, and requiring the receiver to cause a copy of the order to be served personally upon all stockholders residing in the state of Washington, at least twenty days prior to the time set, and also requiring a copy to be served by mail upon all nonresident stockholders.

On the day of the hearing, the appellants, Chester Thorne, A. F. McClaine, and Alfred Coolidge, appeared and filed, as stockholders in the corporation, written demurrers to the petition of the receiver, upon the grounds, (1) that the petition does not state facts sufficient to authorize an assessment to be levied against them, and (2) that the proceeding was not commenced within the time limited by law. Various other stockholders also appeared and contested the assessment, and, together with the appellants, objected to the introduction of any evidence upon the grounds stated in the demurrers. These objections were overruled, and the court proceeded to examine witnesses and hear the evidence in support

of the allegations of the petition, and thereafter made and entered its findings of fact substantially as the same were stated in the petition, and, as a conclusion of law therefrom, found that the assessment should be levied against the stockholders. The court further found that all of the assets of the corporation were exhausted, "the last of which were disposed of on or about the 15th day of February, 1902;" that the debts of a strictly banking character then due amounted to $32,102.97, with interest on the principal sum at six per cent from November 22, 1895, amounting to $13,804.27, making a total of principal and interest for such debts of $45,907.24; that, in order to pay the same, an assessment of thirty-six and seventy-two one hundredths per cent was necessary to be made on all who were stockholders at the time the debts were incurred, making $36.72 per share; and that all of the debts were incurred prior to the 22nd day of November, 1895, the time of the receivership. A decree was entered accordingly, as follows:

"Now Therefore, by reason of the law and the premises aforesaid, it is hereby ordered, adjudged and decreed that each, all and every of the stockholders of the Puget Sound Loan, Trust & Banking Company, who were such at the time the debts found by the court in its findings of fact accrued, be and they are hereby, equally and ratably and not one for another, assessed on their statutory liability as such stockholders, to the amount of 36 72-100 per cent of the par value of the capital stock of said Puget Sound Loan, Trust & Banking Company held by each of said stockholders, as shown by the books of said company.

"And it is further ordered that written or printed notice of this assessment be given to each of said stockholders, which notice shall be sent by mail to the place of residence of said stockholders as shown by the books of said bank, or as known to the receiver, and that said as-

sessment be and is hereby made payable to J. B. Bennett, as receiver of the Puget Sound Loan, Trust & Banking Company, on or before the 12th day of March, A. D. 1903.

"Done in open court this the 9th day of February, A. D. 1903."

The respondent moves to dismiss the appeal upon the ground that the amount in controversy was not shown to exceed the sum of $200 in the case of any one stockholder, and several cases are cited to the point that the record must affirmatively show, where parties whose interests are several separately appeal, that the amount in controversy exceeds $200 in the case of each appellant. The appellants seem to concede that the amount in controversy should exceed $200, but claim that it is the total amount in controversy which controls the jurisdiction. But neither contention is material here. It is only in civil actions at law for the recovery of money in which the jurisdiction of this court on appeal is limited by the amount in controversy. This is clearly an equitable proceeding, and the appeal lies to this court irrespective of the amount in controversy. *Fox v. Nachtsheim,* 3 Wash. 684, 29 Pac. 640; *Blake v. State Sav. Bank,* 12 Wash. 619, 41 Pac. 901; *Fenton v. Morgan,* 16 Wash. 30, 47 Pac. 214; *Campbell v. Simpkins,* 10 Wash. 160, 38 Pac. 1039; *Grifflth v. Maxwell,* 20 Wash. 403, 55 Pac. 571.

The respondent moves to dismiss the appeal on the further ground that the appellants are not parties to the action or proceeding; the contention being that the corporation is the only defendant, that the stockholders are not named in the petition, and that there is nothing in the case to show that the appellants are stockholders, no proof having been taken on that point. The petition in this proceeding certainly relates to the rights of stockholders, and they were, by order of the court, duly served with notice requiring

them to appear at the hearing, and the order finally entered recites the names of the stockholders who were so served, and it further appears that the appellants appeared as stockholders and contested the proceeding instituted by the petition. We think that this makes them parties to the special proceeding instituted by such petition. If the order or judgment is of conclusive effect for any purpose, it must be because it is binding upon the stockholders, and, if the stockholders are bound by the final conclusion, they are certainly parties to the proceeding

The respondent also moves to dismiss the appeal on the ground that the order appealed from is not a final order or judgment. No cases are cited upon this proposition, but the appellants in reply cite the case of *Shuey v. Adair,* 24 Wash. 385, 64 Pac. 536, as holding that such an assessment order as was made in this case would not be held void in a collateral attack, and as intimating that a direct appeal might lie therefrom. This raises the most serious question on the motion to dismiss.

The order is not appealable unless it is a final order or judgment. It is held by this court in *State ex rel. Newland v. Superior Court,* 16 Wash. 444, 47 Pac. 965, that an order directing a sale and distribution of assets of an insolvent was appealable as a final order in that particular proceeding. So, also, it was held that an order, made in a receivership, directing the sale of the rolling stock of a railroad corporation and determining the preference of the claims of certain creditors, is appealable as a final determination of the title to the property. *Radebaugh v. Tacoma & Puyallup R. Co.,* 8 Wash 570, 36 Pac. 460; and in *Tompson v. Huron Lumber Co.,* 5 Wash. 527, 32 Pac. 536, we held that an order allowing or disallowing compensation to a receiver is a distinct proceeding as to the amount allowed, and appeal-

able as a final order.   See, also, *Slater v. Stevens County
Bank,* 12 Wash. 488, 41 Pac. 168; *Horton v. Barto,* 17
Wash. 675, 50 Pac. 587; *Wilbur v. Wilbur,* 17 Wash.
683, 50 Pac. 589.  In the case of *In re Frasch,* 5 Wash.
344, 31 Pac. 755, 32 Pac. 771, it was held that an or-
der making a partial distribution of an estate, and
that a secured creditor be paid a dividend only after
having first exhausted his security, was appealable as
a final order; and we have frequently held that orders
requiring the payment or application of funds in the
registry, or under the control, of the court were appeal-
able as final orders respecting the matters determined,
although no final judgment had been entered in the case.
*State ex rel. Schloss v. Superior Court,* 3 Wash. 696,
29 Pac. 202; *In re Hill's Heirs,* 7 Wash. 421, 35 Pac.
131; *Chandler v. Cushing-Young Shingle Co.,* 13 Wash.
89, 42 Pac. 548.

The same rule seems to prevail in other jurisdictions.
In *Wabash etc. Canal v. Beers,* 1 Black 54, the supreme
court of the United States held that an order adjudging
that the defendant pay a certain sum into court within
a limited time, or that in default thereof the court will
appoint a receiver, is appealable as a final decree.   The
court said:   "It is positive, and not alternative.   It
leaves no question of right between the parties open for
future adjudication.   The decree orders the money to
be brought into court within a limited time, and the
court warns the defendants that if they fail or make
default a particular measure will be taken to compel
obedience.   There is no want of finality here."   In *Cook
v. The Citizens' Nat. Bank,* 73 Ind. 256, it was held
that an order made upon the report of a receiver requir-
ing a party to bring money into court is appealable as
a final order.   And the same is held in *Succession of*

*Thompson,* 14 La. Ann. 810. In *Central Trust Co. v. Madden,* 70 Fed. 451, in an opinion by Fuller, sitting as circuit justice, it is held that an order decreeing the priority and preference of certain claims, and declaring that they must be provided for and secured in any order of sale thereafter to be made, is a final order and appealable as such. In *Hovey v. McDonald,* 109 U. S. 150, 3 Sup. Ct. 136, which was an appeal from an order confirming an account of a receiver, and which the court called "a side issue in the case, in which the complainants on the one side and the receiver on the other were the real and interested parties," the court said:

"The decree confirming the auditor's report was, as to this matter, a final decree against the complainants, and in favor of the receiver. . . . The receiver, though not a party in the principal suit, was an officer of the court, appointed in the suit, and was a principal party to the particular question raised by the proceedings referred to,"

and refused to dismiss the appeal. In *Grant v. Los Angeles etc. R. Co.,* 116 Cal. 71, 47 Pac. 872, it was said that an order fixing a receiver's compensation, while not nominally one from which the statute authorizes a direct appeal, yet,

"Such an order, however it may be designated, is, in legal effect, 'a final judgment upon a collateral matter arising out of the action,' and is 'appealable by any party interested in the fund.' (*Grant v. Superior Court,* 106 Cal. 324, [39 Pac. 604,] and cases there cited.) The appellant has such an interest."

While one of the tests as to the finality of an order is thus stated by Spelling,

"An important, and, in fact, the only reliable test of the question whether an act of the court is its judgment or only an order is the answer to the inquiry whether

it disposes of all the material issues raised by the plead-
ings between all the parties, so far as it is within the
power of the court to dispose of them,"

yet it was further said:

"It is not necessary, however, to the finality of a judg-
ment, that it dispose of all the rights of the parties per-
taining to the subject matter of the litigation. It is
final if it dispose of such rights and interests as are in-
volved in the action or proceeding in which it is made,
aside from the question of whether the same rights, or
others not in issue, might be, or are even then being,
litigated elsewhere." 2 Spelling, New Trial and Appeal,
Sec. 482, pp. 995, 998.

Tested by the foregoing rules, it seems to us that the
matter before us is a special proceeding, collateral to
the main suit, in which the receiver, as the representa-
tive and trustee of the creditors on the one hand, and the
stock holders on the other hand, were the parties adversely
interested, in which a decree was entered which affects
a substantial right of the stockholders. Two main ques-
tions were put in issue by the proceedings, and finally
determined by the court, viz., (1) the right of the cred-
itors represented by the receiver to have an assessment,
that is, whether any assessment could be properly levied
at that time; and (2) the amount of the assessment.
Testimony was heard, and the stockholders availed them-
selves of an opportunity to cross-examine witnesses upon
the subject of the amount of the assessment, and the
court finally decreed the amount of the bank debts of
a strictly banking character then existing. Upon that
point the decree must be considered final, at least as to
all parties regularly before the court and contesting that
question. If the court had power to finally determine
the exact amount of the · assessment, certainly it ought
to have had power to determine the receiver's right to

any assessment at all, for it would be idle to determine the amount, if the right did not exist.

That the decree is one from which an appeal will lie becomes more apparent when viewed from the aspect of an adverse decision. Suppose, for instance, it had appeared on the face of the petition that the last of the assets had been exhausted and applied more than six years before the petition for the assessment was filed; doubtless the court would have sustained the demurrers on the ground that the right to prosecute this remedy had accrued more than six years ago; but that is exactly what the appellants are contending now appears from the face of the petition. Suppose, further, that the demurrers had been sustained, and the proceeding dismissed, on the ground that an assessment could not be properly levied at this time by reason of lapse of time; no one would doubt the receiver's right to appeal as from a final order; and, if a decree will give one party a right to appeal, when adverse to him, it must confer the same right on the other under a like condition. *Penter v. Staight*, 1 Wash. 365, 25 Pac. 469; *Taylor v. Spokane Falls etc. R. Co.*, 32 Wash. 450, 73 Pac. 499. On the whole, therefore, we think that an appeal lies from the decree in the case before us, and that the cause is here for determination upon its merits.

The principal point made by the appellants in the court below, and the only one we shall discuss, is that the enforcement of the stockholders' liability is barred by the statute of limitations; and this resolves itself into the question, when did the right of action accrue?

Our constitutional provision is entirely silent as to when, or at what moment, the superadded liability therein provided for attaches. In that particular it is not unlike the constitutional or statutory provisions in many other

states which create a similar liability, and, measured by the standard announced in such other states, there would seem to be but little doubt upon the question. In nearly all of them, where the law creating the liability is silent as to the time when the cause of action accrues, it is held that the right of action accrues immediately upon the insolvency or like default of the corporation. *Hawkins v. Furnace Co.,* 40 Ohio St. 507; *Barrick v. Gifford,* 47 Ohio St. 181, 24 N. E. 259, 21 Am. St. 798; *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5 South. 120; *First Nat. Bank v. Greene,* 64 Iowa 445, 17 N. W. 86, 20 N. W. 754; *Bank of Poughkeepsie v. Ibbotson,* 24 Wend. 473; *Shellington v. Howland,* 53 N. Y. 371; *Hunting v. Blun,* 143 N. Y. 511, 38 N. E. 716; *Hirshfeld v. Bopp,* 145 N. Y. 84, 39 N. E. 817; *Flash v. Conn,* 109 U. S. 371, 3 Sup. Ct. 263; *McKusick v. Seymour etc. Co.,* 48 Minn. 158, 50 N. W. 1114; *Crease v. Babcock,* 10 Met. 525; *Grew v. Breed, id.,* 569; *Commonwealth v. Cochituate Bank,* 3 Allen 42; *Baker v. Atlas Bank,* 9 Met. 182; *Younglove v. Lime Co.,* 49 Ohio St. 663; *Terry v. Tubman,* 92 U. S. 156; *Terry v. Anderson,* 95 U. S. 628; *Carrol v. Green,* 92 U. S. 509; *Freeland v. McCullough,* 1 Denio 414; *Hardman v. Sage,* 124 N. Y. 25, 26 N. E. 354; *State ex rel. Stone v. Union Stock Yards St. Bank,* 103 Iowa 549, 70 N. W. 752, 72 N. W. 1076; *State Savings Association v. Kellogg,* 52 Mo. 583; *Gibbs v. Davis,* 27 Fla. 531, 8 South. 633; *Todhunter v. Randall,* 29 Ind. 275; *Sleeper v. Norris,* 59 Kan. 555, 53 Pac. 757; *Hicks v. Burns,* 38 N. H. 141; *New England Com. Bank v. Stockholders,* 6 R. I. 154, 75 Am. Dec. 688.

There are a number of obvious reasons for the rule. By the terms of the constitution, the stockholders are made liable *in praesenti,* and there is no postponement,

express or implied, by the imposition of any condition precedent. The language of the provision is,

"Each stockholder of any banking corporation . . . shall be individually and personally liable, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation . . . accruing while they remain such stockholders, to the extent of the amount of their stock therein . . . in addition to the amount invested in such shares." Const. art. 12, § 11. It is true that, under the decisions in *Wilson v. Book,* 13 Wash. 676, 43 Pac. 939, and *Watterson v. Masterson,* 15 Wash. 511, 46 Pac. 1041, the liability is held to be secondary, and not primary, and that, in the event of the insolvency of the corporation, the fund created thereby becomes a trust fund for the benefit of creditors, to be enforced only by the receiver; but this, it seems to us, ought not to be held to affect the question as to the time the action accrues; and, in the great majority of the cases above cited, it is held that it does not. As the liability becomes a trust fund upon the insolvency of the corporation, insolvency must be the event that gives rise to the liability, and places it within the reach of the receiver; and, this being true, it must logically follow that the cause of action accrues at the same time. A right of action ordinarily accrues by reason of some wrong, default or delict of the defendant—his infringement of a right of the plaintiff, or a failure in duty he owes to the plaintiff. "The elements of any cause of action are: (1) A right possessed by the plaintiff; (2) and infringement of such right by the defendant." "A right claimed or wrong suffered by the plaintiff, on the one hand, and the duty or delict of the defendant on the other." *Atchison, etc., R. Co. v. Rice,* 36 Kan. 593, 14 Pac. 229; *Rodgers v. Mutual Endowment Asso.,* 17 S. C. 410; *Veeder v. Baker,* 83 N. Y. 156; Pomeroy on Remedies,

§ 452 (1st ed.).   And according to Webster's or Bouvier's definitions of "accrue," it is sufficiently accurate to say that, when the two elements constituting a cause of action, viz., a right possessed by the plaintiff on the one hand, and the infringement thereof or delict of the defendant on the other hand, both co-exist—"arise, happen or come to pass"—they are combined, and a cause of action accrues at that moment.   An adjudication of insolvency, legal dissolution, or a general assignment, any declared or *de facto* insolvency of the corporation, amounts to and is a refusal to perform all obligations. These events, in the nature of obligations repudiated and duties unfulfilled, are "delicts" or defaults of the defendant, and when they come into existence they are combined with the pre-existing right of the plaintiff, and a "cause of action" "accrues" against the corporation on all its obligations, within the strict and literal sense of those terms as above defined.   ".  .  .   The claims .  .  .  growing out of the insolvency of the defendant, and the repudiation of its duty  .  .  .   by a discontinuance of its business, are debts due *in praesenti* upon the dissolution of the corporation."   *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5 South. 120.

"The stoppage of payment by the bank gave at once the right of action.   It had never refused payment before. It was in no default until the day indicated, when it closed its doors, and by its acts spoke as significantly as words to that effect: 'We refuse to pay any one.   It is useless to present your bank-book or demand, as we cannot pay.' "   *Mitchell v. Beckman,* 64 Cal. 117, 28 Pac. 110.

Immediately upon the declared insolvency of the corporation there is a general default, by which every creditor is disastrously affected.   We think the true intent

and purpose of the constitution is to insure against this identical disaster by providing for a liability to arise in the event of it. "The creditors were at that time [upon insolvency] in the position of one to whom an obligation is due on demand, or who can make demand upon the doing of an act himself." *Franklin Sav. Bank v. Bridges,* (Pa.) 8 Atl. 612. The insolvency "fixes the liability of the stockholders." *First Nat. Bank v. Greene,* 64 Iowa 445, 17 N. W. 86, 20 N. W. 754; *Tibballs v. Libby,* 87 Ill. 145. Such an event is the delict or default of the corporation, and it must also be the delict or default of any other person who has bound himself for the performance of the same duty. The relation of cause and effect between the event of insolvency and the resulting liability is obvious, and naturally we expect to find a "cause" in the "event" from which every right of action accrues. Stockholders stand as sureties for the debts of the corporation, and the default of the principal is the default of the surety. It is invariably held that the cause of action against a surety accrues upon the default of the principal. See *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733. In that case this court says: "The liability arose when he [the principal] neglected or refused to make such payment. Certainly, the cause of action against the sureties accrued at that date."

It has often been claimed that there is no liability until the corporate assets have been exhausted and actually applied. But the rule as to the secondary nature of the liability, as we have above indicated, has no application to the statute of limitations; it is merely a rule for the equitable application of the funds. We have seen that our constitutional provision prescribes no such condition precedent, but creates a liability *in praesenti;* and,

while the delict or wrong of the stockholder may be said not to arise until there is a default or wrong by the corporation, that certainly is as long as the enforcement of the liability can be postponed with safety or justice. We do not think that the voluntary act of the receiver, in paying out the last dollar of the primary assets, creates or causes the duty of the stockholders, under this constitutional provision. The liability for the payment is not made to depend upon the application of assets, as these are but the conditions that accurately fix the extent of liability; not the delict that creates it. And an order of court can not create the liability. The order does not pertain to the right of action, but only to the evidence required to establish it.

Again, it has been many times held—and this is another important reason why the action should be held to be barred—that it is not the policy of the law to put it within the power of a party to toll the statute of limitations. And this court has at least twice held that the failure of a party to take the necessary steps to perfect his right of action, although such steps were conditions precedent to the right, would not prolong the statute. *Spokane County v. Prescott, supra; Spinning v. Pierce County,* 20 Wash. 126, 54 Pac. 1006.

As we have above indicated, it is the respondent's contention that the statute of limitations did not begin to run against the liability until the date of the decree ordering the assessment, and a number of cases are cited in support thereof. The cases cited, however, with one exception, are not in point. They relate to the stock subscription liability, or to national bank cases, both of which are governed by entirely different principles from those controlling the liability created by the constitution. The necessity of a call and assessment, on unpaid stock

subscriptions, is based solely on the express contract of the parties. *Scovill v. Thayer,* 105 U. S. 143; *Terry v. Anderson,* 95 U. S. 628. The contract of the subscriber to the stock is that he will pay upon a demand by the proper authorities of the corporation. And it has been invariably held that, as to the stock subscription liability, a call or demand must precede the suit. So, in the national bank cases, the amount of the liability in any given case is "to be determined by the comptroller of the currency" (U. S. Revised Statutes, § 5151); and this clause in the banking act was early construed to repose a discretion in the comptroller as to the amount which it would be necessary to demand of the shareholders, and, consequently, to require that an assessment be levied by the comptroller before there was any liability. In *Kennedy v. Gibson,* 8 Wall. 498, 505, it is said:

"It is for the comptroller to decide when it is necessary to institute proceedings aganst the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and if put in issue must be proved."

See, also, *Sanger v. Upton,* 91 U. S. 56. This construction has never been questioned, and the practice which grew up at an early day, in levying assessments in

national bank cases upon a superadded liability, as well as upon the stock subscription liability, has been invariably followed from that day to this. Some of the state courts have apparently fallen into the same practice, without making due reference to the statutory provisions to determine whether the state laws require such an assessment to be made or not. But our constitutional and statutory provisions do not require an assessment, neither do they contain any such provision as that contained in the national banking act just referred to; and these cases, we repeat, cannot be in point. The case cited that does support the contention, as well as certain others we have discovered supporting it, seems to us to be contrary not only to the great weight of authority, but contrary to correct principles also, and we must decline to follow them.

We conclude, therefore, that the contention of the receiver cannot be sustained; that the action against the stockholders accrued when the bank became insolvent, and should have been enforced within six years thereafter. As it has been nearly seven years since the right accrued, the right must now be held to be barred by the statute of limitations. The demurrers should have been sustained. The order appealed from is, therefore, reversed, and the case remanded, with instructions to deny the petition of the receiver and dismiss the proceedings.

MOUNT, ANDERS, and DUNBAR, JJ., concur.