[Civil No. 2535. Filed September 19, 1927.]

[259 Pac. 670.]

J. S. COWDEN and SEVENTEEN OTHERS, Appellants, v. PERRY M. WILLIAMS, as Receiver of the CENTRAL BANK OF PHOENIX, an Insolvent Banking Corporation and THE BANK OF PHOENIX, an Insolvent Banking Corporation, Appellees.

Messrs. Hayes, Stanford, Laney & Allee and Mr. A. W. Lennard, for Appellants.

Mr. J. Early Craig and Mr. J. H. Moeur, for Appellees.

LOCKWOOD, J.—This is an action against certain stockholders of the former Central Bank of Phoenix, hereinafter called the bank, based on section 11, article 14, of the Constitution of Arizona, and section 23 of chapter 31, Session Laws of 1922, commonly known as the state Banking Code, to recover the double liability referred to in those sections. Originally there were some eighteen separate suits filed, one against each stockholder, but by consent of counsel they were consolidated in the lower court, and are heard here as one appeal.

All but one of the facts necessary for a determination of this appeal are undisputed, and we state

them briefly as follows: The Central Bank of Phoenix was a banking corporation, organized under the laws of the state of Arizona. On March 19th, 1921, it suspended business, but on July 1st of the same year resumed operations under the name of the Bank of Phoenix, and continued to conduct a general banking business until February 27th, 1922, when it again and finally closed its doors. The next day the state superintendent of banks took control of the bank, and shortly after the Attorney General commenced an action, alleging, among other things, that it was conducting business in an unsafe manner and was or might become insolvent, asking that a receiver be appointed and the bank put into involuntary liquidation. A confession of the allegations of the complaint was filed, and the court, on March 24th ordered that the affairs of the bank be liquidated, and appointed Andrew Baumert, Jr., as receiver, with general powers to do all necessary things for that purpose. He qualified as receiver and acted as such till March 19th, 1923, when Perry Williams was appointed to succeed him. December 29th, 1922, Baumert filed a report showing the nominal assets as exceeding the liabilities some $150,000, as of the date of the closing of the bank, and of about the same amount as of the date of the report. On December 5th, 1923, Williams filed a report, showing that the actual value of all assets then on hand was some million dollars less than the liabilities. On February 23d, 1924, the court entered an order approving the report last mentioned, finding that the bank was insolvent to an extent greater than $100,000 in excess of its assets, and ordering the receiver to proceed against the stockholders on the constitutional and statutory provisions referred to above. Suits were filed in accordance with such order on November 29th, 1924.

At the hearing of the suits on the merits in the superior court both receivers testified. Williams stated that at least as early as June, 1923, he was satisfied that, short of "a thousand to one shot, as you might say, . . . we had as security several lots of land, and, if oil were discovered on one of these, it might pay out the liabilities of the bank," the institution was insolvent to the extent of at least $500,000. Baumert testified, in substance, that within ten days after accepting the receivership he knew the bank was insolvent. No testimony was offered contradicting these statements, and it may therefore be taken that more than a year before these suits were brought both receivers knew that short of a miracle the bank was hopelessly insolvent.

The trial court rendered judgment in favor of the receiver, and from this judgment the defendants have appealed. There are three assignments of error which raise two questions of law. The first is that section 23, chapter 31, Session Laws of 1922, is unconstitutional. The second is that the suits were barred by the statute of limitations. In order that we may determine the first question, it is necessary that we examine the constitutional and statutory provisions on which the suits are based. They read as follows:

"Section 11. The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock." Article 14, Constitution of Arizona.

"Section 23. *Liability of Stockholders.* The stockholders of every banking corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts,

debts and engagements, of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock, and in case of the dissolution or liquidation of any bank under the provisions of this act or under the laws heretofore in force, the constitutional and statutory liability of the stockholders must be enforced for the benefit of the creditors of such bank by the superintendent of banks or by any receiver heretofore appointed under the provisions of section 294, title IV, Revised Statutes of Arizona, 1913, Civil Code, by an action in the superior court in the nature of a creditors' suit or by any other available action.'' Laws of 1922, chapter 31.

The argument of appellants on this point can be summarized thus: The right given by the Constitution to recover from the stockholders is a property right, vested in the individual creditors of the bank. Any statute placing the right to sue in the receiver deprives them of their property without due process of law, and impairs the obligation of a contract. They cite a number of cases in support of this proposition, the principal one being *Golden* v. *Cervenka*, 278 Ill. 409, 116 N. E. 273, wherein the court says:

''The creditors' rights in this case being constitutional, cannot be restricted by terms imposed by the Legislature. If the receiver can enforce this liability against the stockholders, then the decree must be binding on the creditors and payment to the receiver will discharge the stockholders. The stockholders cannot be compelled to pay, unless their payment discharges the liability. Therefore the statute provides for the collection by a stranger of the individual debt due the creditor and the discharge of the debtor without the creditors' consent. . . . The receiver acquires title, through the corporation, to corporate assets only, and as to such assets he represents the creditors but not in relation to their individual property. The creditors have a right to pursue and control their own remedies in regard to

their own individual property, and did begin suit for the enforcement of the stockholders' liability. It is an unauthorized interference with the rights of the creditors to authorize the collection of the indebtedness due to them individually by a stranger, and with the rights of the stockholders to compel them to pay to a stranger when the Legislature has no authority to make the receipt of the stranger a discharge of the debt. Section 11 is invalid in so far as it authorizes the enforcement of the liability of stockholders to creditors by the receiver."

See, also, *Williams* v. *Carter,* 171 Cal. 658, 154 Pac. 472; *Barth* v. *Pock,* 51 Mont. 418, 155 Pac. 282; *Alsop* v. *Conway* (C. C. A.), 188 Fed. 568.

The decided weight of authority, however, adopts a contrary view, the ground for which is well stated in *Henley* v. *Myers,* 215 U. S. 373, 54 L. Ed. 240, 30 Sup. Ct. Rep. 148, in which it is held, discussing the right of a receiver to bring a suit in equity in the place of individual actions by creditors:

"In becoming stockholders the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well-established doctrine that mere methods of procedure in actions on contract that do not affect the substantial rights of parties are always within the control of the state."

See, also, *Pittsburgh Steel Co.* v. *Baltimore E. Co.,* 226 U. S. 455, 57 L. Ed. 297, 33 Sup. Ct. Rep. 167; *Bernheimer* v. *Converse,* 206 U. S. 516, 51 L. Ed. 1163, 27 Sup. Ct. Rep. 755.

Nor does the fact that the original right was given by the Constitution instead of the statute make a difference. In *Lynch* v. *Jacobsen,* 55 Utah 129, 184 Pac. 929, a very similar situation to that involved in the case at bar was in issue, and the court said, after reviewing the cases:

"It is too well settled to admit of controversy . . . that, where certain rights are granted or certain

liabilities are imposed by state Constitutions, all that is intended thereby, unless otherwise expressed in the instrument itself, is that the Legislature is bound by the constitutional provision as written. . . . If, therefore, the Constitution is silent respecting the remedy . . . the Legislature possesses full power to provide such a remedy. . . . In imposing the stockholders' additional liability the framers of our Constitution did not in the slightest degree limit the right of the Legislature to provide a remedy for its enforcement. That matter, like other remedies, was left entirely to the judgment of the Legislature."

In this opinion the case of *Golden* v. *Cervenka, supra,* was discussed and distinguished on the ground that the Illinois Constitution expressly fixed the remedy as well as the right. We are therefore of the opinion that section 23, chapter 31, *supra,* does not violate any constitutional rights of appellants.

The second and more difficult question is the application of the statute of limitations. It is contended by appellants that the action is governed by subdivision 3, paragraph 709, Revised Statutes of Arizona, 1913, Civil Code, which reads as follows:

"709. There shall be commenced and prosecuted within one year after the cause of action shall have accrued . . .

"(3) An action upon a liability created by statute, other than a penalty or forfeiture."

Appellee suggests that, since the charter of the bank, as well as the constitutional provision, imposes the double liability, it may be that the case is within the six-year provision of the statute (Civ. Code 1913, § 714, as amended by Laws 1917, chap. 76, § 2), referring to contracts in writing. He does not, however, urge this point or cite any authorities in support thereof, and we are satisfied it is not well taken. The matter is governed by subdivision 3, paragraph 709, *supra.*

The question then is: "When did the cause of action accrue?" Under section 23, *supra*, it is evident that it cannot possibly accrue *before* the bank is taken over by the superintendent of banks or a receiver appointed by the court for the purpose of the dissolution or liquidation of the bank. Does it follow that it accrues immediately upon such taking over? There are three lines of cases upon this question. The first holds that the action to enforce the stockholders' liability cannot be brought until the corporation assets are all applied to its debts. The leading case so holding is *Flynn* v. *Bank*, 104 Me. 141, 129 Am. St. Rep. 378, 19 L. R. A. (N. S.) 428, 69 Atl. 771. The second is to the effect that there need not be an application of all the assets, but there must be a judicial determination of the fact of insufficiency of assets. *Kirschler* v. *Wainwright*, 255 Pa. 225, L. R. A. 1917E 393, 100 Atl. 484; *Miller* v. *Connor*, 177 Mo. App. 630, 160 S. W. 582; *Mc-Laughlin* v. *O'Neill*, 7 Wyo. 187, 51 Pac. 243; *Lynch* v. *Jacobsen, supra*. The third adopts the rule that the cause of action accrues as soon as the bank is insolvent. *Bennett* v. *Thorne*, 36 Wash. 253, 68 L. R. A. 113, 78 Pac. 936; *Shearer* v. *Christy*, 136 Minn. 111, 161 N. W. 498; *First Nat. Bank* v. *Greene*, 64 Iowa 445, 17 N. W. 86, 20 N. W. 754; *Pate* v. *Bank of Newton*, 116 Miss. 166, 77 South. 601.

The question is a new one in this jurisdiction, and we are at liberty to adopt whichever rule seems to be most in accord with reason and our public policy. The reasoning in favor of the first view is well stated in *Flynn* v. *Bank, supra*, as follows:

"The statute imposes a new liability before non-existent, and hence, if susceptible of more than one construction, it should receive that imposing the lightest burden. The shareholder is not made liable 'on' the contracts, debts and engagements of the corporation, but only 'for' them. He cannot be

joined in any suit against the corporation on such contracts, etc., because he is not a party to them; nor can the corporation or its receivers sue him, since his liability is not to them or for them, but only 'for' the creditors. It is no part of the corporate asset. It is a liability apart and distinct in origin and character from that of the corporation. The creditor's claim is primarily against the corporation, and only secondarily against the shareholder. The creditor's remedy against him, to use a military metaphor, is a reserve force, to be brought into action only when necessary, only when it becomes apparent that the remedy against the corporation has failed.

"We hold, therefore, that under the statute in this case the shareholder is not to be vexed with suits, and hence the statute of limitations does not begin to run until the assets of the debtor corporation are fully exhausted, nor until it has been judicially ascertained in proceedings against the corporation that a resort to the statutory liability of the shareholders is necessary. In so holding we hold nothing new, but are following the reasoning in the cases in this state. [Citing cases.] The same view was incidentally expressed by the court in *Maine Trust Co.* v. *Southern Loan Co.*, 92 Me. 444, at page 452, 43 Atl. 24, at page 26, where the court said: 'So must the assets of the corporation be exhausted before this liability can be incurred.'

"It is urged in argument that by such a holding the burdens of the shareholders are increased; that they are disabled from discharging themselves from liability; that the creditors can delay almost indefinitely their proceedings against the corporation, and thus prolong the liability of the shareholders against their will. The shareholders, however, are not helpless. They can so conduct the affairs of their corporation that there shall be no default in its obligations. They can themselves apply the corporate assets to the payment of the corporate debts. That their assets are sequestered and receivers appointed is rather the fault of the shareholders than of the creditors; but even then the shareholders can

compel the receivers to proceed with reasonable vigor and speed to a full administration.''

The best exposition of the second rule is found in *Miller* v. *Connor, supra,* and is thus set forth:

"But it is argued on the part of defendant that, as the bank became insolvent and so voluntarily confessed itself through the assignment on June 15, 1899, the cause of action accrued on that date against defendant and the statute has barred the right to sue. It seems that this argument omits to reckon with the character of liability imposed by the statute on the shareholders in the bank. This statute imposes a liability for the debts of the bank in favor of the creditors of the bank in double the amount of the par value of shares held by defendant. Such is not an obligation of the shareholder to the bank as such, but is rather an obligation which it is said is contractual in character in favor of the creditors and secondary to the bank as the principal debtor. The rule of decision is well established to this effect and it will be unnecessary to cite more than the well-considered case of *Pfaff* v. *Gruen,* 92 Mo. App. 560, to sustain it. But see, also, *Abbott* v. *Goodall,* 100 Me. 231 [60 Atl. 1030]. This being true, it would seem, as a necessary sequence, that until the insolvency of the bank, its consequent inability to pay, and the amount essential to be contributed by each stockholder to that end is ascertained and determined by a competent tribunal, no cause of action accrues therefor. Indeed, it is said that the ascertainment of the debts and liabilities of the bank and the judicial determination of the necessity and the requisite extent of the enforcement of the stockholders' liability are essential prerequisites to the collection of the amounts owing by them. Until such an ascertainment is had, the liability and its extent may not be fixed upon any one, for it may be that the bank during liquidation would realize sufficient on its assets, as is frequently done through increase in values of investments, to pay out without resort on the part of the creditors to the secondary obligation of the shareholders. When judicial ascertainment

is had and the assets of the bank are definitely determined to be insufficient, then the *pro rata* contribution of the shareholders may be extended against them to supply the deficiency. It is as a result of such judicial determination and ascertainment that the cause of action arises against the shareholder in a fixed amount. The amount thus fixed for the shareholder to pay then becomes due and it is the failure to pay it when so ascertained to be due, that constitutes the breach of duty because of which the cause of action accrues. This being true, the statute of limitations does not commence to run until that time.''

The argument supporting the third position finds its best expression in the following quotation from *Bennett* v. *Thorne, supra:*

''Our constitutional provision is entirely silent as to when, or at what moment, the superadded liability therein provided for attaches. In that particular it is not unlike the constitutional or statutory provisions in many other states which create a similar liability, and, measured by the standard announced in such other states, there would seem to be but little doubt upon the question. In nearly all of them, where the law creating the liability is silent as to the time when the cause of action accrues, it is held that the right of action accrues immediately upon the insolvency or like default of the corporation. [Citing cases.] There are a number of obvious reasons for the rule. By the terms of the Constitution, the stockholders are made liable *in praesenti*, and there is no postponement, express or implied, by the imposition of any condition precedent. The language of the provision is 'each stockholder of any banking corporation . . . shall be individually and personally liable, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation . . . occurring while they remain such stockholders, to the extent of the amount of their stock therein . . . in addition to the amount invested in such shares.' Const., art. 12, par. 11. It is true that, under the decisions in

*Wilson* v. *Book*, 13 Wash. 676, 43 Pac. 939, and *Watterson* v. *Masterson,* 15 Wash. 511, 46 Pac. 1041, the liability is held to be secondary, and not primary, and that, in the event of the insolvency of the corporation, the fund created thereby becomes a trust fund for the benefit of creditors, to be enforced only by the receiver; but this, it seems to us, ought not to be held to affect the question as to the time the action accrues; and, in the great majority of the cases above cited it is held that it does not. As the liability becomes a trust fund upon the insolvency of the corporation, insolvency must be the event that gives rise to the liability, and places it within the reach of the receiver; and, this being true, it must logically follow that the cause of action accrues at the same time. . . .

"It has often been claimed that there is no liability until the corporate assets have been exhausted and actually applied. But the rule as to the secondary nature of the liability, as we have above indicated, has no application to the statute of limitations; it is merely a rule for the equitable application of the funds. We have seen that our constitutional provision prescribes no such condition precedent, but creates a liability *in praesenti;* and, while the delict or wrong of the stockholder may be said not to arise until there is a default or wrong by the corporation, that certainly is as long as the enforcement of the liability can be postponed with safety or justice. We do not think that the voluntary act of the receiver, in paying out the last dollar of the primary assets, creates or causes the duty of the stockholders, under this constitutional provision. The liability for the payment is not made to depend upon the application of assets, as these are but the conditions that accurately fix the extent of liability; not the delict that creates it. And an order of court cannot create the liability. The order does not pertain to the right of action, but only to the evidence required to establish it."

Reduced to the last analysis the argument in favor of the first two positions is that the stockholder, being only secondarily liable, should not be called on

to pay until it is definitely ascertained not only that there is a deficiency of assets, which he must make up, but how much it is. The reason given for the third position is that, since the constitutional provision makes the stockholders *sureties* for the benefit of the creditors *in praesenti*, as soon as the principal defaults, the cause of action against the surety accrues, and, when a bank closes its doors and passes into the hands of a receiver for liquidation, it has beyond question defaulted in its obligations. The question of the application of the funds received, respectively, from the assets of the bank and the stock is held to be merely a matter of equitable distribution, not going to the cause of action.

We think the true rule to be followed depends on whether the liability of the stockholder is primary or secondary. If it be the former—if on any default of the corporation a creditor may waive his rights against the corporation and sue the stockholder directly—then the right is primary, and the cause of action accrues immediately on the default of the principal debtor. If, on the other hand, the liability is only secondary—if the stockholder is responsible to the creditor only for what the corporation fails eventually to pay—the cause of action, logically speaking, would not accrue until in some manner the extent of the ultimate liability is determined. It will be found on examining the cases that every one holding the liability to be primary follows the third rule, while all those adopting the first and second consider it secondary. It is true that there are cases which follow the third rule and still admit the secondary liability. These cases apparently recognize the logical inconsistency of such a position, and try to reconcile the inconsistency by stating that the rule of secondary liability applies only to the remedy and not to the right.

We think there is no question that our constitutional provision makes the stockholders not sureties, but guarantors, of the debts of the corporation, and that the liability is secondary and not primary, applying to the right as well as to the remedy. It was never intended that creditors, on the default of the corporation in an obligation, should have the right of waiving action against the corporation, notwithstanding the latter might be able to pay, and could eventually be forced to do so, and resorting directly to the stockholders. On the contrary, its purpose was to provide that what could not be made from the corporation the stockholders would pay, to the limit set in the Constitution. Such being the case, until in some way it reasonably appears there will be a deficit after the assets are exhausted which the stockholders will be compelled to make up, no cause of action will exist, and the statute of limitations does not begin to run. The question then is, How shall such fact be made to appear? There are three possible ways. Unquestionably when the assets are exhausted the liability and the precise amount thereof is definitely determined. It may be months or years, however, before this occurs, and in the meantime the stockholders are left in a state of uncertainty as to their status, while the creditors are under the apprehension that, when the liability of the former is settled, their ability to pay may have changed for the worse. On the other hand, if the test be the time when the corporation first goes into the hands of the receiver, the receiver must then, in order to be sure that creditors are protected, file his suit not more than a year after he takes over the bank, regardless of the fact that it may reasonably appear to him at the time that by careful management the bank will pay out. Such a course would in many cases needlessly harass the stockholders, for many corporations which go into the hands of a

receiver are ultimately able to meet all their obligations from their own assets.

The third method is by a judicial investigation and determination of the very matter in issue, to wit, the insolvency of the corporation and the amount thereof. This investigation and declaration may be made at any time after the receiver has taken charge, at his request or at that of a creditor or stockholder.

It seems to us that the method last mentioned is the most logical and the one which best carries out the purpose of the constitutional provision, with the least injury to either stockholder or creditor. While the greater number of authorities accept the second method of determining the accrual of the cause of action, we think they are either based on the doctrine of primary liability, or else an application of the principle of secondary liability to the remedy only and not to the right. We therefore hold that the double liability of stockholders under the constitutional provision above set forth did not give rise to a cause of action until a judicial determination of the fact of insolvency, and necessarily the statute of limitations does not commence to run until then.

It is also claimed that the present receiver cannot maintain this action. The bank went into the hands of the receiver before chapter 31, *supra,* went into effect, and he was appointed under the provisions of paragraph 294, Revised Statutes of Arizona 1913, Civil Code. That paragraph was repealed by the Banking Act, and it is contended that such a repeal, without a saving clause, destroys the authority of the receiver theretofore appointed to act, and the right of the court to appoint another one. Counsel overlook paragraph 5560, Revised Statutes of Arizona 1913, Civil Code, which reads as follows:

"5560. No action or proceeding commenced before any repealing act takes effect and no right accrued is affected by the provisions of such act, but pro-

ceedings therein must conform to the requirements of the acts passed at the same session of the Legislature so far as such last mentioned acts are applicable.''

The receivership proceedings were commenced while paragraph 294, *supra,* was in force, and by the provisions of paragraph 5560, *supra,* were not affected by the repeal of paragraph 294. *In re Hubbs,* 31 Ariz. 252, 252 Pac. 515. Indeed, section 23 of chapter 31, *supra,* expressly gives the right to enforce stockholders' liability to a receiver theretofore appointed by the court. It is inconceivable that, having so recognized the previous proceedings as continuing, the legislature intended that, if a receiver died, resigned or was removed, the court should lose jurisdiction of the matter. The second receiver had exactly the same rights as had the original one.

Having considered all the legal questions involved in this appeal, we are of the opinion that the judgment of the superior court of Maricopa county was correct, and it is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.