[Civil No. 3622.   Filed July 1, 1935.]

[47 Pac. (2d) 421.]

Y. C. WHITE, as Superintendent of Banks of the State of Arizona and Ex-officio Receiver of the Farmers-Commercial State Bank, Insolvent, Appellant, v. S. E. LARKINS, Appellee.

Mr. John L. Sullivan, Attorney General, and Mr. Allan K. Perry, Mr. Evo De Concini and Mr. Lloyd J. Andrews, Assistant Attorneys General, for Appellant.

Mr. John W. Corbin and Mr. Charles E. McDaniel, for Appellee.

LOCKWOOD, C. J.—Y. C. White, as superintendent of banks of the state of Arizona, hereinafter called petitioner, filed a petition in the superior court of Yuma county asking that he be authorized and directed by said court to pay a dividend from certain funds collected by him from the stockholders of the Farmers-Commercial State Bank, an insolvent banking corporation, hereinafter called the bank, to certain preferred creditors of the bank. S. E. Larkins, who

was a general creditor of the bank, filed an objection thereto, contending that a dividend should be paid from the funds in question to the general and preferred creditors of the bank alike. Upon a hearing the trial court ordered that the prayer of petitioner for the payment of a dividend to the preferred creditors be denied and that he be ordered to distribute the funds in question *pro rata* to all of the creditors of the bank, both preferred and general. From this order, an appeal has been taken.

The question before us is one of law, the facts being nowise in dispute. They may be briefly stated as follows: At some time in the past, the exact dates not appearing on the face of the pleadings, the Yuma Valley Bank, the Prescott State Bank, the Commercial Trust & Savings Bank and the Gadsden State Bank, all being institutions incorporated and existing under the banking laws of the state of Arizona, became insolvent and were placed in the hands of the then superintendent of banks for liquidation. He collected a large portion of the assets of said banks and deposited some $17,000 of the money so collected to the credit of each of the institutions in the Farmers-Commercial State Bank, in accordance with the provisions of section 251, Revised Code of 1928, as amended in 1933 (Laws 1933, chap. 97, § 18), which reads, so far as material, as follows:

"Sec. 251. *Deposit of collections; dividends; objections to claims.* The moneys collected by the superintendent shall be from time to time deposited in one or more banks, and in case of the suspension or insolvency of the depository, such deposit shall be preferred before all other deposits or claims. . . ."

Some time later the bank became insolvent, and preferred claims were allowed in favor of the estate of each of the four banks which had money on deposit, as above. The superintendent of banks there-

after collected from various stockholders of the bank some $14,000 under the provisions of section 11, article 14, of the Constitution, which reads as follows:

"Section 11. The shareholders or stockholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock."

This money is the fund involved in this action.

The question before the court is whether the sum so collected shall be paid entirely to the preferred creditors of the bank, above set forth, or shall be distributed *pro rata* among all of the creditors, preferred and general, in proportion to the amount of their claims. It is admitted that the claims which petitioner desires to pay were, under section 251, *supra,* properly allowed as preferred rather than general claims, but it is contended that payment of such claims as preferred can only be made from the assets of the bank as they existed at the time it was declared insolvent. It is the general rule that the assets of an insolvent bank constitute a trust fund for its creditors, and that this fund shall be distributed to such creditors in the order in which their claims are allowed by law. If, therefore, the funds in question which were collected from the stockholders åre, strictly speaking, assets of the bank, since section 251, *supra,* provides that the claims of the other insolvent institutions are to be preferred over those of general depositors or creditors, they should be paid in full from these funds before any payments are made to general creditors. We think, however, that the right of preference only applies so far as assets of the bank itself are concerned.

■ It is very generally held under statutory and constitutional provisions like section 11, article 14, *supra,* that money collected from stockholders by virtue thereof is not, strictly speaking, an asset of the bank, but is a special fund created as a reserve for the payment of creditors in case the assets of the bank itself are not sufficient to satisfy their claims in full. *Cowden* v. *Williams,* 32 Ariz. 407, 259 Pac. 670, 55 A. L. R. 1059; *Assets Realization Co.* v. *Howard,* 211 N. Y. 430, 105 N. E. 680; *Swicord* v. *Crawford,* 148 Ga. 719, 98 S. E. 343; *Farmers' State Bank* v. *Reed,* 114 Kan. 216, 217 Pac. 320. It will be noted that the constitutional provision above quoted expressly provides that the responsibility of the stockholders is equal and ratable and is for all contracts, debts and engagements of the bank and not for any special or preferred claims against it. It is for this reason that it is almost universally held that a stockholder may not set off as against an assessment under the constitutional provision an indebtedness from the bank to him, for this would be in effect making him a preferred creditor, and since the special fund obtained from the stockholders is for the benefit of all the creditors of the bank, allowing a preferential claim therefrom would defeat the constitutional purpose.

There are but few decisions which go to the precise point involved herein, the leading case probably being that of *State* v. *Wibaux County Bank,* 85 Mont. 532, 281 Pac. 341, 343. Therein the question arose as to whether funds collected from stockholders under a statute almost identical in language with that of our constitutional provision should be paid to preferred creditors of the bank or divided ratably among the creditors in general. The court quoted from the case of *Barth* v. *Pock,* 51 Mont. 418, 155 Pac. 282, as follows:

"The liability is several and individual, created by statute in favor of all who are creditors at the date of the bank's failure. . . . The statutory double liability of a stockholder is peculiar to the law governing banking corporations—including therein trust companies. The creditor of a trading corporation must look to the corporation's assets for the discharge of his claim but in a sense, the creditor of a banking corporation has double security. He may look to all the assets of the bank in the first instance, and, if they are not sufficient, he may then call upon the stockholders to contribute a fund which may equal the par value of the entire authorized capital. Over such fund the corporation has no control. It cannot release a stockholder from all or any portion of his liability, and neither it nor the receiver in charge of its affairs can even maintain an action for its enforcement, for it is not a corporate asset. *Zang* v. *Wyant*, 25 Colo. 551, 56 Pac. 565, 71 Am. St. Rep. 145; *Bank* v. *Scott*, 144 Ky. 575, 139 S. W. 801. It is a reserve, trust fund created for the benefit of creditors, and under our statute must be distributed ratably to all of them. Its character is so far distinct that collection can be enforced only at the suit of all the creditors or by one or more creditors for the use and benefit of all. *Bank* v. *Scott*, above; 3 Clark & Marshall on Private Corporations, p. 2584; 3 R. C. L. 412."

It is true that in Arizona the superintendent of banks brings suit to recover from the stockholders, but this is by virtue of a special statute and is for the benefit of the creditors. *Cowden* v. *Williams*, *supra*.

Since the fund collected under the constitutional provision is for the benefit of all creditors and is not an asset of the bank, if we are to construe section 251, *supra*, as requiring that such fund be used to pay the creditors preferred by that section, the latter would be unconstitutional. It is our duty when there are two constructions which may be given to a statute, one of which will render it unconstitutional

and the other constitutional, to adopt the latter construction.

We hold, therefore, that it is the duty of the petitioner to distribute the funds secured by assessing stockholders of the insolvent bank *pro rata* among its creditors, preferred and ordinary, any moneys collected from the general assets of the bank, of course, being used to pay the claims of preferred creditors first.

The judgment of the superior court of Yuma county is affirmed.

McALISTER and ROSS, JJ., concur.