[1] Reported in 267 N.W. 482.
The commissioner of banks levied a 100 per cent assessment on the shares of the capital stock held by the stockholders of the Peoples State Bank of Cannon Falls, and the stockholders petitioned the district court to enjoin the enforcement of such assessment.
A trial was had, and the court made findings of fact and conclusions of law enjoining the commissioner from proceeding further with the assessment. Judgment was entered pursuant thereto on January 2, 1935, from which the commissioner appeals.
There are only two assignments of error that may be considered, viz.: That the findings of fact do not justify the conclusions of law and that the findings do not sustain the judgment. This is but one assignment, for the judgment is in accordance with the findings. The disposition of the motion made and submitted several months after the entry of the judgment cannot be reviewed on appeal from the judgment.
This may serve as a sufficient summary of the facts found for an understanding of the correctness of the legal conclusion reached by the court: The Peoples State Bank of Cannon Falls had been organized and been functioning under the laws of this state for several years when, in November, 1926, its stockholders voted to liquidate its business and transfer its assets to the Security State Bank of Cannon Falls; and pursuant thereto, on January 8, 1927, a contract was entered into between the two banks, approved by the commissioner, whereby the Peoples Bank sold and transferred to the Security Bank all its property and assets, and in consideration therefor the Security Bank assumed and agreed to pay and discharge all debts, deposits, and liabilities of the Peoples Bank. The Security Bank did pay and discharge all liabilities and obligations of the Peoples Bank then in existence, and the latter has not since said date functioned as a bank. Prior to the transaction just recited the $25,000 capital stock of the Peoples Bank had become impaired so that on August 9, 1926, the commissioner, pursuant to G. S. 1923, § 7684, gave notice that an assessment pro rata of the stockholders must be made to realize $17,500. Instead of the assessment, the above contract for liquidation or consolidation with the *Page 481 
Security Bank was made. One of the provisions of the contract between the two banks is this:
"After closing hereunder, the Security Bank shall be permanently entitled to the custody, control and use of all the books of account, records and correspondence files of the Peoples Bank, but shall permit reasonable access thereto by the Peoples Bank and the Directors."
In carrying out the contract by which the Security Bank took over or absorbed the Peoples Bank some of the bills receivable transferred were considered of doubtful value, and to assure the Security Bank of their payment the officers and directors of the Peoples Bank, on January 8, 1927, executed two notes in a large amount, and the directors guaranteed their payment. The doubtful notes or bills receivable transferred pursuant to the contract were, when collected, to be applied on these guaranteed notes. A year later the contract was extended for another year and further notes given by the officers and directors of the Peoples Bank. It appears that after the contract between the two banks was made the directors of the Peoples Bank organized the Cannon Falls Holding Company, which acquired the notes mentioned from the Security Bank and brought suit against the Peoples Bank, upon which judgment was rendered on October 2, 1931, for $40,169.25. Execution issued and was returned unsatisfied as to a large amount, whereupon the commissioner of banks, on March 14, 1933, acted, and, by an order filed March 31, 1933, levied an assessment of $100 on each share of the capital stock owned by the stockholders. This proceeding followed to enjoin the enforcement of the order.
From the memorandum accompanying the findings it appears that the court concluded that the commissioners order of March 31, 1933, on its face disclosed noncompliance with L. 1927, c. 254 (2 Mason Minn. St. 1927, §§ 7699-20 to 7699-24, inclusive), the exclusive procedure under which stockholders in defunct banks may now be assessed. We shall not stop to consider the merits of this contention, for we think that the decision should be placed on the ground that the stockholders' liability is barred by the statute of *Page 482 
limitations. This was also one of the grounds upon which the learned trial court based his decision.
The commissioner of banks knew in August, 1926, that the Peoples Bank was insecure; for, as above stated, he made the assessment order of August 9, 1926. The bank did liquidate and go out of existence as a going bank on January 8, 1927, by the contract with the Security Bank, approved by the commissioner. The commissioner has supervision and control of all state banks. From that date the bank's doors were closed as effectively as if the commissioner had taken charge. It was thereafter incapable of doing any banking business. It had no assets whatever, did not even own its books of account. All its liabilities then existing have been discharged. We do not consider or decide whether or not the obligations, incurred by the Peoples Bank and its officers and directors, which finally culminated in the judgment that caused the commissioner to make the assessment order of March 31, 1933, are debts of the bank for which its stockholders are liable under Minn. Const. art. 9, § 13, subd. 3. That proposition was not determined in Bank of Litchfield v. McClure, 191 Minn. 308, 253 N.W. 764, for there judgment was granted on the pleadings, which show that the judgments to be enforced by the commissioner's order of assessment were based upon obligations incurred by the absorbed bank while it was in business. On January 8, 1927, the Peoples Bank ceased to exist as a banking institution. The community where its place of business had been knew that it was no more. For all practical purposes it was as well known to be out of existence, as far as carrying on a banking business, as if a receiver had been appointed or the commissioner had taken it over. It is well settled in this state that the statute of limitations starts running against stockholders' constitutional liability of a corporation from the date it goes into the hands of a receiver. Shearer v. Christy, 136 Minn. 111, 161 N.W. 498; Miller v. Ahneman, 183 Minn. 12, 235 N.W. 622. In the Miller case it is to be noted that the receiver was empowered to continue the business of the insolvent corporation, yet it was held that the statute of limitations on the stockholders' constitutional liability began to run when the receiver was appointed. *Page 483 
Respondents cite cases from other jurisdictions, but statutes and constitutions vary, and there are two divergent lines of authorities on this subject so that nothing will be gained by an attempted citation or discussion of the same. However, they are annotated in Cowden v. Williams, 32 Ariz. 407, 259 P. 670,55 A.L.R. 1059. Both in the Shearer case and in the Miller case this court considered it desirable that the "double" liability of stockholders in defunct corporations should be speedily determined. And it seems to us that when such a corporation as a bank, which can function only publicly in a designated city or village, closes its doors and ceases to operate as a bank, the statute of limitations begins to run against the constitutional liabilities of its stockholders. In the instant case more than six years expired after the Peoples Bank closed its doors and ceased to function as a bank and before the commissioner started to enforce the stockholders' liability. We think the conclusions of law are sustained by the facts found.
The judgment is affirmed.